IN THE MATTER OF CORNELIUS F. TURNER, JR.,
AN ATTORNEY AT LAW.

Argued June 12, 1980—Decided July 22, 1980.

*Colette A. Coolbaugh*, Secretary, argued the cause for the Disciplinary Review Board.

*Charles A. Delehey*, argued the cause for respondent (*Lenox, Giordano, Devlin, Delehey & Socey*, attorneys).

PER CURIAM.

District III Ethics Committee, after hearing, filed a present-ment against Cornelius F. Turner, Jr., a member of the bar of this State, finding that he had violated DR 1–102, DR 7–102(A)(7), and DR 9–102. The Disciplinary Review Board reached the same conclusions and recommended that respondent be publicly reprimanded for his conduct, noting that respondent is no longer engaged in the private practice of law in New Jersey.

We have reviewed the records made before the District III Ethics Committee and the Disciplinary Review Board and adopt the factual findings of the Board which read as follows:

The record reveals that respondent had first been retained by the corporation in question, Anchor Finance Company, in October 1974. Respondent was not hired as house counsel, but acted as an independent attorney. He was paid $300 a week for his services which included work on a variety of legal matters. During the time in question respondent performed legal services for other clients in addition to Anchor Finance Company.

Anchor Finance, during the period it retained respondent, sold a number of accounts receivable to Castle Credit Corporation, a Philadelphia based collection agency. Castle Credit paid a lump sum at the time of the assignment with the understanding that additional monies would be due upon verification by Castle Credit of the existence and value of all the accounts.

In the latter part of 1974 Anchor Finance began to experience serious financial and legal difficulties. The latter concerned alleged bond sale irregular-ities. On November 27, 1974, the State of New Jersey, Bureau of Securities, brought an action in Superior Court attempting to place Anchor Finance in receivership. The court did not place Anchor Finance in receivership at that time. However, the financial condition of the company continued to deteriorate and the State again instituted receivership proceedings. The matter was heard by the Hon. Samuel Lenox, sitting in New Jersey Superior Court, on December 20, 1974. By this date Anchor Finance had defaulted on interest payments to its bond holders and had issued worthless checks to employees. Respondent had been issued [three] worthless checks and was due a [fourth] check on the date of the hearing. [Respondent was owed $1,200 at the time of the hearing].

On the morning of December 20,1974, respondent appeared before Judge Lenox to argue against having Anchor placed in receivership. At the noon court recess respondent met with William Valyo, president of Anchor Finance, and received from him a check for $6,000. The check in question was received by Valyo from Castle Credit earlier that morning and represented the balance due Anchor in payment for the assignment of accounts receivable. The check was made out to Anchor Finance and the respondent. Respondent then gave William Valyo a personal check, with the payee designation blank, in the amount of $4,800. Following the noon court recess, respondent returned to court and Judge Lenox placed Anchor Finance in receivership. Respondent subsequently

deposited the $6,000 check in his personal bank account. Respondent did not at the time maintain either an attorney business or trust account in New Jersey.

■ A lawyer has an obligation of being candid and fair with the court. As an officer of the court, his duty can be no less. In *People v. Beattie*, 137 *Ill.* 553, 574, 27 *N.E.* 1096, 1103 (Sup.Ct.1891), the Court, commenting on this duty, wrote:

The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions.

Thus, the ABA Committee on Professional Ethics has held that it is improper in a foreclosure case to conceal from the court an arrangement under which each attorney would act as special master in all foreclosure actions instituted by the other and would allow the fee for such services to be retained by the attorney who brought the suit. American Bar Association Committee on Professional Ethics, *Opinions*, No. 94 (1933). This opinion rests on the premise that an attorney is under a duty, when the proper administration of justice so requires, to disclose all pertinent and relevant facts to the court so that it may act fairly. Ethical Considerations of the American Bar Association Code of Professional Responsibility likewise reflect that a lawyer should not suppress evidence that he has a legal obligation to reveal or produce when it interferes with the proper administration of justice. EC 7–27 to Canon 7 of the ABA Code of Professional Responsibility. Moreover, partial disclosures may at times result in misrepresentations due to the nondisclosure of material facts.

■ The $6,000 check, an asset of Anchor Finance, was delivered to respondent during the luncheon break of the receivership hearing before Judge Lenox. Respondent knew the check represented monies due Anchor Finance. As an officer of the court, he had a duty to advise the court of this asset and until being advised of the court's disposition of the receivership application to hold the money in trust. Respondent's failure to do so constituted violations of *DR* 1–102, as conduct prejudicial

to the administration of justice, and of *DR* 7–102(A)(3), by failing to disclose that which he was required to reveal.

It is also clear that respondent entered into the plan with William Valyo motivated by the desire to obtain the funds due for legal services rendered. We are not convinced that he assisted Valyo in conduct that the respondent knew was illegal. Though this resulted in a preference to respondent, we do not find that his conduct in this respect was fraudulent. See *DR* 7–102(A)(7).

■ Respondent admittedly maintained no trust or business accounts. He was under a duty to do so. *R.* 1:21–6(a).

Respondent is hereby reprimanded and ordered to reimburse the Administrative Office of the Courts for the costs of stenographic transcripts out of this disciplinary proceeding.

*For reprimand*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*Opposed*—None.