IN THE MATTER OF EUGENE J. MCDONALD, AN
ATTORNEY AT LAW.

April 30, 1985.

## ORDER

The Disciplinary Review Board having filed a report recom-
mending that EUGENE J. McDONALD of MATAWAN be
publicly reprimanded for his violation of *DR* 7–102(A)(5), know-
ingly making a false statement of fact, and *DR* 1–102(A)(1),
engaging in conduct involving misrepresentation and engaging

in conduct that adversely reflected on his fitness to practice law, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and that EUGENE J. McDONALD be and hereby is publicly reprimanded for his violation of *DR* 7–102(A)(5) and *DR* 1–102(A)(1); and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said EUGENE J. McDONALD as an attorney at law of the State of New Jersey; and it is further

ORDERED that EUGENE J. McDONALD reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board based upon a panel report of the District IX (Monmouth County) Ethics Committee recommending a private reprimand. After initial review the Board determined to consider it as a presentment.

Respondent is charged with violating *DR* 1–102(A)(4), *DR* 7–102(A)(5) and *DR* 7–106 by concealing or knowingly failing to disclose to a municipal court that the criminal defendant he was prosecuting had made partial restitution on some checks which were returned for insufficient funds. The facts underlying this matter are as follows:

Respondent was asked by his uncle, Arnold Lauer, owner of Garber Plumbing Supply, to represent the company in its attempt to collect on five checks totalling $9,800. The checks were issued between September 23 and October 23, 1980 by John Burke, trading as J & S Heating Inc., and were returned for insufficient funds. Mr. Lauer had signed two complaints

against Mr. Burke on December 11, 1980, after discussing the transactions with Old Bridge police. One charged theft by deception, *N.J.S.A.* 2C:20–4; the other issuance of bad checks, *N.J.S.A.* 2C:21–5. The charges were forwarded to the county prosecutor for grand jury action on February 13, 1981. The theft by deception charges were later administratively dismissed and the bad check charges were remanded for municipal court disposition.

While the charges were pending, Respondent wrote a letter dated February 2, 1981, to Mr. Burke's attorney advising him that his client had passed bad checks, and also owed money on his regular account. That attorney replied by letter dated February 4, 1981, which stated;

Enclosed please find the checks in partial restitution in connection with the above matter.

I hope to send you several thousand dollars additional on February 15th thereafter.

I appreciate your attitude and cooperation in this matter !1T28–9 to 101.*

Respondent forwarded the checks to his uncle. On the same date, the attorney for Mr. Burke wrote the following letter to Mr. Lauer:

At your nephew's request, I sent him two cashier's checks totalling $3,500.00 payable to Garber's Supply Co. I enclosed a copy of that letter of transmittal. I will be in touch with you as soon as I have some more money on account. In the meantime, I would appreciate it if you would send me copies of the invoices reflecting the other monies owed to you by Mr. Burke's business.

After we get the check problem straightened out, I would like to make an agreement with you for Mr. Burke to repay the other monies owed on some steady basis.

I appreciate your attitude and cooperation in this matter !1T29–14 to 191.

In addition to the $9,800 which Mr. Burke owed because of the returned checks, he owed Garber Plumbing about $6,000 for earlier transactions.

The case was heard by the Old Bridge Municipal Court on May 13, 1982. Respondent was called to present the State's

---

* 1T refers to the District Ethics Committee hearing of May 9, 1983.

case before the trial began when it was learned that the municipal prosecutor would not prosecute this case. Arnold Lauer Jr. testified that Mr. Burke had not paid Garber $2,000 against these checks. He could not recall if Mr. Burke had sent him a check for $3,500. During legal argument concerning a question asked Mr. Lauer, Respondent stated he had never received checks from Mr. Burke's former attorney for the book account. He referred to a February 12, 1981 letter from that attorney asking Respondent to send him copies of outstanding invoices for other than the bad checks. Respondent claimed that Mr. Burke's attorney led him to believe Mr. Burke would make payments on the outstanding account and not on the bad checks. Respondent initially denied receiving $3,500 from Mr. Burke's former attorney. He later conceded that he received this amount when an adjournment was requested to produce evidence of this payment.

Mr. Burke explained that he was handling his own book-keeping records at the time the checks bounced. He then went to Garber Plumbing and paid $2,000 in cash as restitution. He later, through his attorney, sent Garber $3,500. Neither Arnold Lauer, company owner, nor Arnold Lauer Jr., company vice-president, recalled these two payments. The municipal court judge found Mr. Burke guilty of all five and gave him a 30-day county jail sentence on each count, consecutive to each other. He also placed Mr. Burke on probation for two years and ordered restitution for $9,800, the total amount of the five checks. On appeal, the Superior Court reversed the convictions, finding that the State did not prove intent or that Mr. Burke knew there were no funds or insufficient funds in the account. The judge believed Respondent and Mr. Lauer were annoyed because Mr. Burke had gone into bankruptcy thus causing Garber a loss of money and that this prosecution was "a way of extracting some measure of vengeance." Concerning Respondent's conduct, the judge concluded:

that there was a deliberate attempt to obtain a conviction in the court below by if not outright misrepresentation of the facts, by an outright deception in not

telling the whole truth and nothing but the truth ... but by devious skirting of the issues and the facts !3T22–19 to 3T23–11.**

By letter dated July 15, 1982 the attorney representing Mr. Burke at the municipal court hearing acted on the Superior Court judge's suggestion and notified the District Ethics Committee of what had transpired at the municipal court hearing. A formal complaint was filed against Respondent on March 18, 1983 charging that his conduct before the municipal court violated *DR* 1–102(A)(4), *DR* 7–102(A)(5) and *DR* 7–106. Respondent filed an answer on April 22, 1983, denying the allegations. The matter was heard by the District Ethics Committee on May 9 and June 27, 1983. During that hearing, Respondent testified that he had not intentionally made a misstatement of facts with the intent to obstruct justice. He maintained that when he represented in municipal court about not receiving the $3,500 he meant he had not received a lump sum payment. The payment was to have been applied against the outstanding book account and not the bad checks. The District Ethics Committee held that Respondent knew of the $3,500 payment and "did not accurately and straightforwardly represent this knowledge to the Municipal Court Judge." It further concluded that Respondent had not conducted himself in a proper manner at the municipal court hearing and recommended that he receive a private reprimand.

After considering the recommendation of the District Ethics Committee, the Board determined to bring the matter on before it for hearing.

## CONCLUSION AND RECOMMENDATION

██  Upon a review of the full record, the Board is satisfied that the conclusions of the District Ethics Committee in finding unethical conduct on the part of Respondent are fully supported by clear and convincing evidence.

---

**3T refers to the transcript of the municipal court appeal on June 25, 1982.

The Board agrees with the Ethics Committee finding that Respondent knew of the $3,500 payment and had not candidly informed the municipal court of this. The two February 4, 1981 letters are uncontroverted proof that the money was sent. The Ethics Committee further found:

> In mitigation, Mr. McDonald was representing a relative and admittedly may have acted in an overzealous manner and it is apparent from a reading of the transcript, as well as Mr. McDonald's testimony, that he was clearly frustrated by the lack of business sense of his client as well as the fact that his client lost a substantial amount of money due to the ultimate bankruptcy of complainant, John Burke. It is evident that Mr. McDonald found himself in a difficult position but this does not excuse Mr. McDonald's unprofessional conduct. [District Ethics Committee report at 41]

Whatever Respondent's motives were, they cannot be accepted to excuse his conduct before the municipal court. "The conduct and the motive of attorneys must be such as to merit the approval of all just men. They should strive at all times to uphold the honor and to maintain the dignity of the profession." *In re Genser*, 15 *N.J.* 600, 606 (1954).

An attorney's obligation to the court was succinctly stated in *In re Turner*, 83 *N.J.* 536, 537 (1980), where the court said:

> A lawyer has an obligation of being candid and fair with the court. As an officer of the court, his duty can be no less. In *People v. Beattie*, 137 *Ill.* 553, 574, 27 *N.E.* 1096, 1104 (Sup.Ct.1891), the Court commenting on this duty, wrote:
>
> > The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions. [*Id.* at 539, 416 *A.*2d 894]

The Board finds that Respondent violated *DR* 7–102(A)(5) by knowingly making a false statement of fact to the municipal court judge. The Board further finds that he violated *DR* 1–102(A)(1), (4) and (6) by engaging in conduct involving misrepresentation and engaging in conduct that adversely reflected on his fitness to practice law.

█ The primary purpose of discipline is not to punish the offender but to protect the public from the members of the bar who fail to meet their professional responsibilities. *In re Goldstaub*, 90 *N.J.* 1, 5 (1982); *In re Stout*, 75 *N.J.* 321, 325 (1978), "The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian*, 88 *N.J.* 308, 315 (1982).

In determining the appropriate discipline in this matter, the Board, as did the Committee, has considered Respondent's lack of years of experience before the courts. He was admitted to the bar in 1978. Respondent has no prior disciplinary record and there are no complaints pending against him. Nevertheless, his misrepresentation to the court was deliberate and greatly prejudiced the defendant. The bar must be cautioned that such behavior is wholly unacceptable in an attorney. Therefore, a requisite majority of the Board has concluded that public discipline is warranted and recommends that he be publicly reprimanded for his conduct.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.

