IN THE MATTER OF SIEGMAR SILBER, AN
ATTORNEY AT LAW.

October 7, 1985.

## ORDER

The Disciplinary Review Board having filed a report recommending that SIEGMAR SILBER of PATERSON, who was admitted to the Bar of this State in 1970, be publicly reprimanded for aiding in the unauthorized practice of law in violation of *DR* 3–101, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and that SIEGMAR SILBER be and hereby is publicly reprimanded for his violation of *DR* 3–101; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full

record of the matter, be added as a permanent part of the file of said SIEGMAR SILBER as and attorney of the State of New Jersey; and it is further

ORDERED that SIEGMAR SILBER reimburse the Ethics Financial Committee for appropriate administrative costs in this matter.

## Decision and Recommendation of the
## Disciplinary Review Board

This matter is before the Board based upon a panel report of the District XI (Passaic County) Ethics Committee recommending a private reprimand. After initial review the Board determined to consider it as a presentment.

Respondent is charged with violating *DR* 3–101 by aiding in the unauthorized practice of law. The underlying facts are as follows:

Respondent instructed his law clerk to accompany his client Kathleen Perrow to the Passaic County Courthouse on November 23, 1982 and to answer the calendar call for him. He had another client in his office at that time and could not leave. Respondent had represented Ms. Perrow in 1978 in her initial divorce proceedings and was now representing her on her application for an increase in child support and for counsel fees. His client had refused his attempts to settle the matter out of court and the application was scheduled for a plenary hearing. Respondent also informed his law clerk, who had only been employed with him for about two months, to telephone him as soon as he was required to be there.

Either on the way or at the courthouse, the law clerk informed Ms. Perrow that she was not a member of the New Jersey Bar. At that time, the law clerk had passed the Pennsylvania Bar but had not yet been sworn in; she was awaiting the bar results from New Jersey and the Federal Patent office. Ms. Perrow did not comprehend the significance of this at that time because she was "so wrapped up in what was going to be

happening" and she was upset. When Ms. Perrow asked where Respondent was, the law clerk replied:

Well, I will be representing you today [T13–23].* The law clerk went into the judge's chambers and negotiated with the attorney representing Ms. Perrow's former husband. When these discussions proved unsuccessful, she went into the court room and represented Ms. Perrow in open court, questioning witnesses and arguing before the court. She did this without authorization from Respondent and without his knowledge. The law clerk had not called Respondent because, as she later told the Committee on Character, she felt a sense of camaraderie with the client and felt she was acting as an agent for Ms. Perrow. The law clerk was later reprimanded by the Committee on Character for her actions.

When they returned to Respondent's office, the law clerk informed him what had taken place in court. He realized that she had acted improperly. His client expressed displeasure with the results and that he had not represented her at that hearing. According to Ms. Perrow, Respondent asked his law clerk in her presence:

Counselor, have you figured out how much you want for your fees [T15–12 to 14]?

Ms. Perrow was "dumbfounded" when she heard this; the law clerk looked puzzled. Before Ms. Perrow left the office, Respondent handed her a typed bill for $400 which stated that it was for the preparation of the application for support, conferences, telephone calls and appearance.

Respondent did not inform the court about his law clerk's *ultra vires* appearance. He felt that further action would not improve his client's position. Respondent also discussed the matter with another attorney who suggested that he do nothing about it. He later chastised the law clerk about her conduct. Even when Respondent received a copy of the proposed court

---

* T refers to transcript of Ethics Committee Hearing of February 8, 1984.

order showing his law clerk as an authorized attorney, he did not contact the court to correct this misrepresentation. Instead he allowed the order to be signed and entered, perpetuating the misrepresentation.

Ms. Perrow wrote Respondent a letter dated December 2, 1982, in which she held him directly responsible for the adverse court ruling. She informed him she had contacted both the State Bar Association and the State Supreme Court and suggested that the Respondent and she meet and discuss the matter in detail. In response to a letter from the Ethics Committee, Respondent, by letter dated December 20, 1982, maintained that Ms. Perrow had been fairly represented by his office and that the Ethics Complaint was unfounded. The law clerk, also by letter dated December 20, 1982, defended her actions.

An Ethics Complaint was filed against Respondent on January 24, 1983. He was charged with violating DR 3-101 by allowing his legal assistant to represent a client in a matrimonial action. Respondent filed his answer March 10, 1983, stating that he had not authorized his clerk to appear in court or to represent his client. The matter was heard by an Ethics Committee panel on February 8, 1984. After hearing testimony, the panel recommended that Respondent be privately reprimanded. It found that he violated DR 3-101(A) since his failure to take corrective action when he learned of her conduct aided his law clerk in the unauthorized practice of law.

After considering the recommendation of the District Ethics Committee panel, the Board determined to bring the matter on before it for hearing. Respondent did not personally appear at the hearing but was represented through counsel.

## CONCLUSION AND RECOMMENDATION

■ Upon a review of the full record, the Board is satisfied that the conclusions of the District Ethics Committee in finding

unethical conduct on the part of Respondent are fully supported by clear and convincing evidence.

It is well settled that an attorney is obligated to be fair and candid with the court. He is an officer of the court and has a duty to aid the court in doing justice. See, *In re Turner*, 83 *N.J.* 536, 539 (1980).

Respondent knew after the fact that his law clerk misrepresented her status before the court when she appeared on behalf of his client. When he was told on the day this occurred, he did not notify the court. After consultation Respondent determined that the best course of action was to take no action. When he received the proposed form of order and had a further opportunity to correct the misrepresentation, he did not do so.

The Board agrees with the Ethics Committee that Respondent had several occasions to correct this problem. By failing to take any action, Respondent violated *DR* 3–101(A) by aiding in the unauthorized practice of law. He also furthered the misrepresentation before the court, *DR* 1–102(A)(4), which was prejudicial to the administration of justice, *DR* 1–102(A)(5).

The Board is mindful that the severity of discipline must comport with the seriousness of the ethical infraction in light of all relevant circumstances. *In re Nigohosian*, 88 *N.J.* 308, 315 (1982).

In determining the appropriate discipline, the Board has considered that Respondent, who was admitted to the Bar in 1970, has no prior disciplinary record. There are no pending complaints against him. However, the Board finds as an aggravating factor that Respondent deliberately failed to take proper action although he had several opportunities to do so. The Bar must be cautioned that such action or lack of action by an attorney cannot be permitted. Therefore, a requisite majority of the Board has concluded that public discipline is warranted and recommends that he be publicly reprimanded for his conduct.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.