68 A.3d 892

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. NEIL COHEN, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 2009—Decided July 2, 2009.

Before Judges CARCHMAN, R.B. COLEMAN and SABATINO.

*Anthony A. Picione,* Deputy Attorney General, argued the cause for appellant (*Anne Milgram,* Attorney General, attorney;

*Mr. Picione* and *Robert C. Rowbotham, II,* Deputy Attorney Generals, of counsel; *Johanna Barba Jones,* Deputy Attorney General, on the brief).

*Mark H. Tuohey, III* (*Vinson & Elkins*) of the District of Columbia bar, admitted pro hac vice, argued the cause for respondent (*Rogut McCarthy* and *Mr. Tuohey,* attorneys; *Mr. Tuohey, Andrea L. Surratt* (*Vinson & Elkins*) of the District of Columbia bar, admitted pro hac vice, *Daniel J. McCarthy* and *Colleen E. Patterson,* of counsel and on the brief).

*Gibbons P.C.,* attorneys for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*Lawrence S. Lustberg,* on the brief).

PER CURIAM.

This appeal requires us to balance the competing interests of a criminal defendant who seeks discovery of materials that go to the essence of the underlying charged offenses, with the public interest in prohibiting the dissemination of the same materials—contraband child pornography. The trial judge fashioned a protective order that, by its terms, provided for defendant's discovery of the relevant materials but established strict guidelines that limited access and use of the materials. We conclude that while the State of New Jersey's concerns focus on the *possibility* of misuse of the materials, the judge's order recognizes these concerns and establishes procedures to minimize such eventuality. Accordingly, we conclude that defendant is entitled to discovery under the terms of the protective order and affirm.

By leave granted, the State appeals from the protective order permitting defendant Neil Cohen discovery of the alleged child pornography that provides the underpinnings for the criminal charges lodged against him. While the State does not dispute that defendant is entitled to discovery of such evidence, it challenges the manner and methodology of transmission and examination of the purported evidence.

In the carefully crafted protective order of March 23, 2009, Judge Council balanced the protected rights of a defendant to discovery under *Rule* 3:13-3 with the legitimate policy of minimizing the dissemination of child pornography to ensure that the victims of such unlawful conduct are not re-victimized through court-sanctioned access. Since both the State and defendant agree that the defense is entitled to inspection and testing of the discoverable materials, the sole issue in dispute is which party maintains control of the discovery while it is being reviewed and tested by the defense. The State is willing to make the materials available to defendant but asserts that it must retain ultimate control, even during the discovery process, to minimize the possible improper dissemination of child pornography. Defendant claims that the order addressed the State's concerns and the defense should control the discovery during the pendency of the case.

We briefly set forth the relevant facts informing our consideration of the issues. In July 2008, New Jersey State Police began investigating allegations that defendant, a former State Assemblyman, had used his office computer to view child pornography. Within a month, the police seized suspected pornographic matter, including eleven computers from defendant's legislative office, and commenced a forensic examination of the contents of the computer hard drives. The investigation and examination sought to determine whether defendant had been visiting child pornography sites. As part of their investigation, officers entered web sites for child pornography that had been accessed through the confiscated computers. The investigation continued, and sixty-two images were transmitted to and reviewed by the State's expert, Dr. Robert L. Johnson.

On December 17, 2008, defendant was indicted by the State Grand Jury for second-degree official misconduct, *N.J.S.A.* 2C:30-2; second-degree endangering the welfare of a child (reproducing child pornography), *N.J.S.A.* 2C:24-4(b)(4); second-degree endangering the welfare of a child (disseminating child pornography),

*N.J.S.A.* 2C:24–4(b)(5)(a); and fourth-degree endangering the welfare of a child (possessing child pornography), *N.J.S.A.* 2C:24–4(b)(5)(b).

Discovery commenced, and on March 10, 2009, the judge ordered the State to produce copies of all the computer images and data obtained during the investigation. The State moved for reconsideration and for a stay. On March 23, 2009, the judge denied the State's motions, but granted an extension for production of the images until April 2, 2009. The judge also entered a protective order, which included detailed provisions and safeguards for the defense's handling of the computer images and data. Included were limitations on those having access to the materials and further provisions regarding access during the discovery process.

The order contains thirteen decretal paragraphs.[1] To summarize, the order requires the State to provide two copies of the computer images and data to defense counsel and that such material not be "copied, reproduced, distributed, disseminated, electronically stored and/or electronically uploaded or downloaded" or used for any purpose other than the prosecution or defense of this action. The defense must use a dedicated, non-networked computer to view the materials and keep the materials and the computer locked and secure when not in use. The materials must be conveyed to and among defense counsel and defense experts by hand-to-hand delivery, and at the conclusion of the matter, the materials be transferred back to the State in the same manner. Anyone viewing the materials on behalf of the defense would be subject to and furnished with the order, and any retainer agreement between defense counsel and their experts would include a provision certifying that the expert acknowledges the terms of the order. Defendant would not be permitted to view the materials outside the presence of defense counsel. Finally, at the conclusion of the matter, the parties are to agree on specific procedures to

---

[1] A copy of the order is attached to this opinion as Appendix A.

ensure that the materials are completely and irretrievably deleted from any computers on which the materials were viewed.

The State, thereafter, moved for leave to appeal and for a stay pending the outcome of the interlocutory appeal. We granted both motions and ordered the appeal accelerated. On April 23, 2009, while the appeal was pending, the State offered to have

a representative bring the contraband to defense counsel and/or their representatives to view at their offices, but on a State-owned computer that could be sanitized afterward. Both the images and the computer would be retained by the State except when being actually viewed.

That offer remains extant.

On appeal, the State raises two issues [2]: 1) did the court err by ordering the State to reproduce and deliver the evidence of child pornography to defendant; and 2) was the court's protective order sufficient to ensure that the child pornography would not be disseminated.

## I.

■ As we noted, the focus of the State's primary argument is that the court erred by ordering it to deliver images of child pornography to the defense. The argument is premised on the theory that if the images are released to the defense, the State can no longer be assured that the images will not be illegally reproduced and disseminated, which would cause harm to any child depicted in the pornography.

*Rule* 3:13–3(c) provides in part:

Discovery by the Defendant. The prosecutor shall permit defendant to inspect and copy or photograph the following relevant material if not given as part of the discovery package under section (b):

(1) books, tangible objects, papers or documents obtained from or belonging to the defendant;

. . . .

---

[2] The State raised two other points that are rendered moot by our granting leave to appeal and the stay.

(3) results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the matter or copies thereof, which are within the possession, custody, or control of the prosecutor;

. . . .

(5) books, papers, documents, or copies thereof, or tangible objects, buildings or places which are within the possession, custody or control of the prosecutor;

*Rule* 3:13–3(f) permits the court to issue a protective order, which denies, restricts or defers inspection of certain evidence so as to protect witnesses and others from harm or threats of harm. *Rule* 3:13–3 does not contain a specific restriction for disclosure of child pornography; however, the comment to *Rule* 3:13–3(f) provides examples of when discovery may be restricted, including: the identity of confidential informants; surveillance sites; parole records; school records; and even, to certain extents, instances when a claim of privilege will be waived at trial. Pressler, *Current N.J. Court Rules,* comment 6 on *R.* 3:13–3(f) (2009).

We have invoked the protective provisions of *Rule* 3:13–3(f), when circumstances warrant such limitation on discovery. In *State v. Cusick,* 219 *N.J.Super.* 452, 455–59, 530 *A.*2d 806 (App. Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987), we affirmed the denial of release of confidential DYFS records of a child victim of sexual abuse, which the defendant claimed he needed to prepare a defense. The trial court found that the records were confidential, that disclosure was not necessary for resolution of any issue in the case and that most of the information was available from other sources. *Id.* at 457, 530 *A.*2d 806. We balanced the defendant's discovery needs against the public policy of keeping DYFS records confidential and found that disclosure was not necessary. *Id.* at 459, 530 *A.*2d 806.

Similarly, in *State v. Krivacska,* 341 *N.J.Super.* 1, 35, 775 *A.*2d 6 (App.Div.), *certif. denied,* 170 *N.J.* 206, 785 *A.*2d 435 (2001), *cert. denied,* 535 *U.S.* 1012, 122 *S.Ct.* 1594, 152 *L.Ed.*2d 510 (2002), we restricted access of the defendant to the school records of a child victim of sexual abuse, stating that it was sufficient for the judge to view the records *in camera.* We noted that when restricting discovery, a court must perform a balancing test to determine

whether the needs of the defendant to prepare a defense outweigh the victim's right to privacy. *Ibid.*

Two critical distinctions are apparent in *Krivacska* and *Cusick*. In those cases, the defendants were denied discovery of confidential material, whereas here, the State agreed to provide access to the evidence so long as it is viewed while under the control of the State. More important, however, the restricted discovery in *Krivacska* and *Cusick* did not form the basis of the complaint against the defendants and were not proofs anticipated to be presented by the State at trial. Here, the discoverable material sought by defendant is the critical evidence supporting the allegations of the criminal charges.

The Court has demonstrated a keen sensitivity to protect child victims involved in court proceedings. For example, in preserving the anonymity of children who testified regarding sexual abuse, our Supreme Court recognized that "protection of the children's physical and psychological welfare constitutes a compelling state interest." *Application of VV Pub. Corp.*, 120 *N.J.* 508, 512–13, 577 *A.*2d 412 (1990) (internal quotations omitted); *see also N.J.S.A.* 2A:82–46. A similar state interest is present here, and no one can legitimately question the long-term detrimental effects of child pornography on the victims. *New York v. Ferber,* 458 *U.S.* 747, 760 n. 10, 102 *S.Ct.* 3348, 3356 n. 10, 73 *L.Ed.*2d 1113, 1125 n. 10 (1982) (stating that the threat to a victim of child pornography is even greater than the threat of sexual abuse or prostitution, because the "child's actions are reduced to a recording" and the child "must go through life knowing that the recording is circulating within the mass distribution system for child pornography").

Relying on this unassailable premise, the State argues that child pornography is contraband, and any dissemination of it, even in discovery, is presumptively illegal. Recognizing that there must be an accommodation for discovery, the State contends that the court should only provide access to the images at a State facility or on a State-issued computer, where the State would maintain control over the pornography and eliminate any risk that the

images would be disseminated to unauthorized third parties or to the public.

Defendant responds that his ability to prepare a defense will be severely impeded by not having total access to the materials. He asserts that there are numerous CDs, DVDs and hard drives containing a voluminous amount of material created by government agents in the discovery phase of this litigation. He argues that the defense must have unfettered access to the images in order to evaluate them and resolve such questions as who created the images, when were they accessed, whether they are in fact pornography and whether the images are of real children, as opposed to virtual images or adults dressed as children. Defendant explains that the process by which an expert analyzes and evaluates the images requires equipment, software and an entire forensics laboratory, which would be impractical for defendant to import to a State facility. Defendant also contends that his counsel and experts need continuous access to discovery in preparing for trial and during the trial itself. Moreover, defendant represents that the expert he has chosen is out-of-state and cannot be required to come to New Jersey each time it is necessary to view the images.[3]

No reported New Jersey authority has considered the issue of the discovery of child pornography, but other jurisdictions, including the federal courts and Congress, have addressed the question.

In 2006, Congress enacted the *Adam Walsh Child Protection and Safety Act of 2006,* (the Act), *Pub.L.* No. 109–248, § 501(1)(B), 120 *Stat.* 587, 623 (2006). The purpose of section 504 of the Act is to amend 18 *U.S.C.A.* § 3509 by adding subsection (m), which prevents the unauthorized release and redistribution of child pornography that the government has gathered for use in a criminal trial. 18 *U.S.C.A.* § 3509(m) provides:

---

[3] It is unclear whether the State's offer of a computer would extend to an out-of-state expert in his or her office, or to defendant's out-of-state counsel. At oral argument, defendant suggested that he is considering retention of a local expert.

Prohibition on reproduction of child pornography.

(1) In any criminal proceeding, any property or material that constitutes child pornography ... shall remain in the care, custody, and control of either the Government or the court.

(2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography ... so long as the Government makes the property or material reasonably available to the defendant.

(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

The constitutionality of the Act has been upheld in *United States v. Shrake*, 515 *F*.3d 743, 745–46 (7th Cir.2008), and *United States v. Johnson*, 456 *F.Supp*.2d 1016, 1019 (N.D.Iowa 2006) (holding that the Act is constitutional, because it restricts who may control the images but not what the defendant may introduce at trial). However, courts have been indulgent in permitting defendants access to materials when restrictions also preclude or significantly burden a defendant's ability to mount a defense. In at least one federal case, the court has interpreted the "ample opportunity" requirement of the Act to permit disclosure of the evidence when a defendant established that analysis of the material at a government facility would compromise the expert's effectiveness. *See United States v. Knellinger*, 471 *F.Supp*.2d 640, 647 (E.D.Va.2007).

■■■■■ The State's expressed concern about the propriety of dissemination of the alleged child pornography to defendant, citing the limitations expressed in the Act, warrants further discussion. We first note that the Act is not authoritative for state criminal proceedings. *State ex rel. Tuller v. Crawford*, 211 *S.W*.3d 676, 679 (Mo.Ct.App.2007) (noting that 18 *U.S.C.A.* § 3509(m) is a procedural provision solely applicable to proceedings in the federal court). Moreover, when the question has arisen in state courts as to whether the defense counsel, when possessing child pornography in connection with preparing a defense, could be prosecuted

for violation of the Act, the courts have held that the Act did not permit such prosecution. *State v. Allen*, No. E2007–01018–CCA–R3–CD, 2009 *WL* 348555 at 6–7, 2009 *Tenn.Crim.App. LEXIS* 114 at 17–18 (Tenn.Crim.App. Feb. 12, 2009)[4]; *State v. Brady*, 119 *Ohio St.*3d 375, 894 *N.E.*2d 671, 679 (2008) (holding that the Act allowed for ample opportunity for inspection by a defense expert), *cert. denied*, ⸺ *U.S.* ⸺, 129 *S.Ct.* 2389, 173 *L.Ed.*2d 1304 (2009) (No. 08–9139). We agree that the exercise of rights of discovery, critical rights afforded to a criminal defendant, *see State v. Broom–Smith*, 406 *N.J.Super.* 228, 239, 967 *A.*2d 359 (App.Div. 2009); *State v. Gilchrist*, 381 *N.J.Super.* 138, 146–47, 885 *A.*2d 29 (App.Div.2005), cannot give rise to a criminal offense of improper possession when appropriate use of the materials is sanctioned by court rule or an order of a court.

Prior to passage of the Act, some federal courts had already denied defendants copies of child pornography evidence, stating that it was contraband. In *United States v. Kimbrough*, 69 *F.*3d 723, 731 (5th Cir.1995), *cert. denied*, 517 *U.S.* 1157, 116 *S.Ct.* 1547, 134 *L.Ed.*2d 650 (1996), the court held that child pornography is "illegal contraband," which should not be copied or distributed in discovery. Moreover, the defendant's ability to inspect the evidence at government offices was sufficient to protect his rights. *Ibid.* The Fifth Circuit Court of Appeals rejected the defendant's argument that the quantity of material, and the defendant's not having a copy of it, prejudiced his ability to make an adequate defense. The court stated that the defendant's need for substantial time to view the material was irrelevant and did not establish prejudice. *Ibid.*

The Eighth Circuit Court of Appeals, in *United States v. Horn*, 187 *F.*3d 781, 792 (8th Cir.1999), *cert. denied*, 529 *U.S.* 1029, 120 *S.Ct.* 1442, 146 *L.Ed.*2d 330 (2000), affirmed the district court's denial of a copy of a videotape to the defendant, because it was

---

[4] This decision is unpublished and we cite it for informational purposes only. R. 1:36–3.

"*prima facie* contraband." On appeal, however, the defendant argued for the first time that he needed the copy so that the publisher of the film could ascertain the ages of the children. The court stated that had defendant advanced that argument at trial, the court might have been required to grant the defendant's motion for the material to be copied. *Id.* at 792–93.

In *United States v. Husband,* 246 *F.Supp.*2d 467, 468–69 (E.D.Va.2003), the court relied on *Kimbrough* and *Horn* in finding that a videotape was contraband and therefore did not require that copies be made. However, *Husband* involved only one videotape as opposed to potentially thousands of images that might exist in a case involving computer digital images.

Notwithstanding the Act and the limited federal decisions restricting discovery, the majority of state courts that have addressed this issue have required the prosecution to reproduce the materials for defendant's use and control.

In *Westerfield v. Superior Court,* 99 *Cal.App.*4th 994, 121 *Cal.Rptr.*2d 402, 403 (2002), the prosecution restricted discovery by permitting the defendant to view the images only in the presence of law enforcement officers in the FBI's offices and had refused to make copies of the child pornography. The defendant moved to permit copying of the images so that his attorneys could view them privately, to speak confidentially about them and to submit them for examination by experts. The trial court denied the defendant's motion, noting that the prosecution permitted defense counsel's unfettered access to the images and removal of law enforcement from the room while the images were being examined. On appeal, the court stated that nothing in the child pornography statute supported the view that the California Legislature intended that use of the images to prepare a defense would qualify as disseminating the material in violation of the law. *Id.* at 404.

The *Westerfield* court also found that the prosecution's interpretation of the statute not only "exalts absurdity over common sense, but it is also logically flawed." *Ibid.* Requiring defense counsel to

view thousands of images and commit them to memory impeded the effective assistance of counsel. *Id.* at 405.

In *Cervantes v. Arizona*, 206 *Ariz.* 178, 76 *P.*3d 449, 454–55 (Ct.App.2003), *review denied*, 2004 *Ariz. LEXIS* 32 (Ariz. Mar. 16, 2004), the Arizona Court of Appeals rejected a restriction on alleged child pornography images being viewed only at a state facility. Instead, it ordered their release to the defendant because the discovery rules did not contain an exception when the evidence sought was contraband, and the State had not demonstrated why the court should impose a restriction. If a court decided to restrict viewing of evidence, the Arizona rules required imposing the "less restrictive alternative." The court stated that a protective order would have been less restrictive than requiring defense counsel to view the evidence at the state facility. *Id.* at 456. The Arizona court distinguished *Horn, Kimbrough* and *Husband,* as those cases involved a determination as to whether any error that occurred had been harmless, and in at least one instance, the State had permitted the defense counsel to view the material in his office. The court opined that by holding that contraband could not be distributed for purposes of preparing a defense, those courts had misstated the rule. *Id.* at 455–56. The court concluded that where there was no evidence that defense counsel would use the materials improperly, the materials must be reproduced. *Id.* at 457.

In *Washington v. Boyd,* 160 *Wash.*2d 424, 158 *P.*3d 54, 59 (2007), the Washington Supreme Court clarified that

the burden is on the State to establish, not merely claim or allege, the need for appropriate restrictions. The defendant does not have to establish that effective representation merits a copy of the very evidence supporting the crime charged.

In *Boyd,* the court advocated the use of protective orders to safeguard the interests of the victims. *Id.* at 62. Some of the limitations the court addressed to protect the victims were: that the defendant may only view the material under defense counsel's supervision; that defense counsel is obligated to be personally and professionally responsible for any unauthorized distributions of or access to the evidence; that access by non-counsel should be

preceded by court order; that evidence must be secured and inaccessible to anyone other than defense counsel; that evidence has to be promptly returned at the end of the criminal proceeding; that access to the material may only be for purposes of defending the action; that a "firewall" must be erected between the Internet and any computer used to access the materials; and that the computer should be cleared of evidence or its traces before being made accessible for other purposes. *Ibid.*

The court in *Boyd* noted that allowing the defendant copies of the evidence made sense, because the materials would "be presented in open court, referenced in the examination and testimony of witnesses, and discussed in opening and closing statements." *Ibid.* The court stated that "[e]ven if the right to a fair trial could be satisfied while denying copies only to the defense, the cost to justice [under such a scheme] would be disproportionate to the benefit." *Id.* at 63. *But see State v. Ross,* 792 *So.*2d 699, 702 (Fla.Dist.Ct.App.2001) (relying on *Kimbrough* and finding no prejudice to defendant to review the materials at a state facility).

The State urges that we adopt the principles enunciated in the Act to inform our determination of whether to require that the images be copied for defendant. The State contends that it is not seeking to compromise defendant's ability to formulate a defense, but rather is requesting a protective order that maintains the images in the custody of the State.

Defendant argues that the requirement that defendant's experts view the images at a State facility impinges upon defendant's right to utilize a defense expert whose identity is not yet disclosed to the State. In support of this, defendant cites *State v. Mingo,* 77 *N.J.* 576, 584–87, 392 *A.*2d 590 (1978), wherein the Court observed that communication with an expert is an essential aspect of the preparation of a defense and is protected by the attorney-client and work-product privileges. Disclosure of the identity of an expert should not be compelled unless that expert is going to be a trial witness. *Id.* at 587, 392 *A.*2d 590; *see R.* 3:13–3(d)(3).

We are of the view that requiring a defense expert to appear at the State facility would interfere with defendant's privilege, because, even if safeguards are employed, there is a substantial probability that the identity of the expert will prematurely become known to the State. Even the State's belated offer of a computer raises similar concerns if the State representative is required to bring the computer to the expert's laboratory.

We find compelling defendant's argument that his defense would be impeded by having to "import" the expert's laboratory to the government facility. The State contends that only sixty-two images have been forwarded to the State's expert for analysis. However, defendant correctly counters that thousands of images were viewed from websites accessed by law enforcement agents as part of the discovery in this litigation. In addition, there is apparently no clarity regarding the ages of the individuals in the images or whether the images were virtual or depicted real people. The expert may have to perform a lengthy analysis to determine whether the images are child pornography and when the images were viewed. Such a process could be cumbersome, if not impossible, for defendant's expert, if required to perform this analysis at the State facility. Further, the State's offer to provide a computer at the office of "defense counsel and/or their representatives" does not solve the problem but raises new ones.

The reasoning in *Boyd* is persuasive. Because ultimately the materials will be presented in court[5], it is unfair to preclude defendant from having copies of them to aid his counsel and experts in preparing his defense. Significantly, the expert analysis may prove to be ongoing, as the pretrial and final phases of this matter develop, and particularly as video and images and contested issues become a matter of adversarial judicial focus. Although the State has offered to supply access to the images on

---

[5] At oral argument, the State acknowledged that the images and other materials would be required at trial. We do not decide here the issue of the manner and procedures to be utilized for display or use of the materials at trial.

an "as-needed" basis, that is too cumbersome. In addition, the State itself will have continuous and unfettered access to the materials. Under our rules, the defense is entitled to equivalent access as well. In balancing the rights of a defendant to prepare a defense against the need to protect a child victim from further dissemination of the materials, a protective order can be fashioned to safeguard the victim without impeding the rights of defendant. That balance was achieved here.

*II.*

In its second argument, the State contends that the protective order is insufficient to ensure that the child pornography will not be disseminated.

Judge Council painstakingly addressed the terms of the protective order with the parties and ultimately entered an order requiring the State to produce two copies of the "images and data" for defendant, provided: the materials could not be copied or reproduced; the materials could only be used in the preparation of this case; the materials could not be disclosed to any other person except defendant, his counsel and his experts; defendant could only view the materials in the presence of counsel; the order binds all parties involved in the investigation, prosecution and defense of the matter; the materials were hand-delivered; any computer that was used to view the materials should not be connected to the Internet, a network or a printer; the materials must be maintained by the defense in a locked file; the materials should be returned at the conclusion of the matter; the parties must destroy all images and data from the computers; and the computers should be overwritten in a manner to make the images irretrievable in the future.

Paragraph 2 of the protective order provided as follows:

(2) *IT IS FURTHER ORDERED* that pursuant to *R.* 3:13–3(f), any and all images and data turned over to defense counsel by the State are not to be copied, reproduced, distributed, disseminated, electronically stored and/or electronically uploaded or downloaded to any computer and/or electronic storage device in any way, other than files created by the computer(s) beyond the control of the user to

permit defense counsel to view the images on the two (2) dedicated computers under defense counsel's control.

Paragraphs 11 and 12 provided as follows:

(11) *IT IS FURTHER ORDERED* that at the conclusion of this matter, the parties shall meet, agree upon and execute the specific procedures which will result in the non-recoverable destruction of all images and data provided under this order, and on all computers and computer components used to examine the materials....

(12) *IT IS FURTHER ORDERED* that any and all images and data remaining on any and all computers and computer components utilized to examine the materials provided under this order shall be deleted and overwritten in a manner rendering the images and data completely irretrievable in the future.

As noted, in developing a protective order pursuant to *Rule* 3:13–3(f), the court must balance the rights of the defendant against the needs of any person requiring protection. *Krivacska, supra,* 341 *N.J.Super.* at 35, 775 *A.*2d 6.

The State objects to the protective order because: paragraph 1 authorizes the manufacture and release of copies of the images; paragraph 2 contains a tacit acknowledgement that copies would be made on defense computers; no person was expressly bound by the agreement other than defense counsel; defense counsel did not assume professional responsibility for the potential failure of their agents to adhere to the order and did not agree to provide a final report on the manner in which the terms of the order were respected; and law enforcement was not permitted to confirm that all inadvertently duplicated data was destroyed. The State requests that, at a minimum, the protective order be revised to conform to the standards in *Boyd.*

Paragraph 2 does not present a replication problem, because paragraphs 11 and 12 ensure that even if files are inadvertently copied by the computer within the hard drive, they would be destroyed at the end of the proceedings. Moreover, defense experts are bound by the order because paragraphs 3 and 6 make the order applicable to "any expert." The judge correctly acknowledged that defense counsel are professionals deserving of the expectation that they will comply with the terms of the protective order and treat the evidence with the utmost care. An

attorney "owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession." *In re Turner*, 83 *N.J.* 536, 539, 416 *A.*2d 894 (1980) (internal citation omitted). *See also RPC* 3.4(c) (prohibiting a lawyer from knowingly violating a court order).

There need not be additional references in the order to defense experts, a report detailing how defense counsel complied with the terms of the order or for law enforcement to ensure compliance with the terms of the order. The order is sufficiently protective of child victims because: the evidence will only be used by defense counsel to prepare a defense; will be on two dedicated computers that will not be connected to the Internet, a network or a printer; will be kept in a locked file; and will be returned to the State at the conclusion of the proceedings. Non-compliance with this order exposes counsel to both professional and judicial sanctions. We do not agree that the protective order need track all of the provisions identified in *Boyd*. The protective order here is reasonable and accomplishes the goal, which is to ensure that the child pornography is not disseminated.

During colloquy, the court suggested that the problems would be solved if the State provided the defense with a computer for viewing the materials, but the State rejected this possibility. Subsequently, by letter dated April 23, 2009, the State agreed to have a representative bring the images to "defense counsel and/or their representatives," to view at their offices on a state-owned computer that would be retained by the State except when the images were actually being viewed.

While the State's offer resolves some of the issues, it still leaves the discovery under the control of the State. The need for defense counsel to have unfettered access to the images and the need for defense experts to maintain anonymity will be compromised by the presence of the State representative who controls the computer.

The essence of the State's position is premised on what *might* occur if defense counsel did not carefully maintain the discovery or

if someone violated the order or inadvertently failed to appropriately care for the discovery materials. Hypothetical examples of misdeeds or human error abound on either side of the issue, but the carefully crafted protective order spells out the parameters of conduct. That should be sufficient to guide the future course of discovery.

The competing interests that have been identified require a careful balance. Neither side of this dispute has advanced a position that represents anything less than a good faith effort to respect and protect their stated interests. But we are satisfied that the order in place provides a reasonable accommodation of these interests, will ensure that defendant receives appropriate discovery and will minimize the State's concern about dissemination and protection of the victims of child pornography.

Affirmed.

# Appendix A

MARK H. TYSON, III
DAVID L. MCCARTHY
ATTORNEYS FOR DEFENDANT
BY: MARK J. TYSON, III
 JOHN A. SPERATI
 PSN & GLENSLIP
 1875 PENNSYLVANIA AVE., NW, #60
 WASHINGTON, D.C. 20006-140

 DAVID J. MCCARTHY
 5X40 MCCARTHY CT.
 STANFORD D 53004 1
 STANFORD, NEW JERSEY 97026

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MERCER COUNTY
INDICTMENT NO. SCI-88-05-1
DOCKET NO. 88-2407x6

STATE OF NEW JERSEY,

 Plaintiff, CRIMINAL ACTION

 v. PROTECTIVE ORDER

_____ N.

 Defendant.

THIS MATTER having been presented to this Court on the application of the Defendant for disclosure of certain evidence to the Defendant in this above captioned matter, and the Court having considered the arguments of counsel for defendant (Mark H. Tyson, III, Esq. and David J. McCarthy, Esq. appearing) and counsel for the State (Anthony A. Penare and Robert C. Roush, Jr., Deputy Attorneys General appearing) and for the reasons expressed by the Court in its conclusions on March 16, 1995, and good cause having been shown therefore;

IT IS on the **28th** day of **March**, 1995,

IT IS ORDERED that is is (2) copies of the computer and data obtained by the State during the course of this investigation, including images of alleged child pornography, is to be turned over by the State to defense counsel on or before March 19, 1995, and

APPENDIX A

276

(2) IT IS FURTHER ORDERED that pursuant to R. 3:13-3(f), any and all images and data turned over to defense counsel by the State are not to be copied, reproduced, distributed, disseminated, electronically stored and/or electronically uploaded or downloaded to any computer and/or electronic storage device in any way, other than files created by the computer(s) beyond the control of the user to permit defense counsel to view the images on the two (2) dedicated computers under defense counsel's control; and

(3) IT IS FURTHER ORDERED that the materials provided pursuant to this order are to be strictly used only to further the prosecution or defense of the allegations contained in this indictment. This shall include the use by any and all law enforcement agencies participating in the investigation and prosecution of this matter, The National Center for Missing and Exploited Children (NCMEC), and any expert deemed necessary by counsel for the State and/or defendant to further the prosecution or defense of the allegations contained in this indictment; and

(4) IT IS FURTHER ORDERED that the materials provided pursuant to this order shall not be disclosed to anyone except the defendant, his counsel of record and any defense experts claimed and working on the case, absent further order of the Court, and that any person to whom the materials provided pursuant to this order are disclosed must be provided with a copy of this order, and that any retainer agreement between the defense's experts and defense counsel will include, in writing, a provision that indicates that the expert acknowledges and understands the existence and terms of this order; and

(5) IT IS FURTHER ORDERED that while the defendant may review the materials provided pursuant to this order, in the presence of counsel, for purposes of assisting counsel in preparing and presenting the defense in this proceeding, under no circumstances shall the defendant be given copies of any part of these materials or be allowed to view said materials outside the presence of counsel; and

(6) IT IS FURTHER ORDERED that this order shall be binding upon all parties involved in the investigation, prosecution and defense of this matter. This includes, but is not limited to any and all law enforcement agencies involved in the investigation and prosecution of this matter, defendant Neil Cohen, counsel for defendant, Mark H. Tuohey, III, Esq. and Daniel J. McCarthy, Esq., and any and all experts consulted with and/or retained by any and all parties involved in this matter; and

(7) IT IS FURTHER ORDERED that any materials provided pursuant to this order will be conveyed via hand-to-hand delivery to New Jersey defense counsel by representatives of the Office of the Attorney

General, and any exchange between defense counsel and/or any expert will be hand-to-hand; and

(8) IT IS FURTHER ORDERED that any computer into which the materials provided pursuant to this order may be inserted for access and operation shall not be connected to the Internet, a network or a printer; and

(9) IT IS FURTHER ORDERED that the materials provided pursuant to this order shall be maintained by defense counsel or the defense expert in a locked file or cabinet accessible only to that person at all times except when being actively utilized as provided for herein and that a copy of this order be kept with the materials at all times; and

(10) IT IS FURTHER ORDERED that within seven (7) days of the conclusion of this matter (i.e, at the time of guilty plea or trial verdict) or the termination of defense counsel's representation of Defendant, all of the materials provided to defense counsel under this order shall be returned by defense counsel in the same manner in which they were conveyed; and

(11) IT IS FURTHER ORDERED that at the conclusion of this matter the parties shall meet, agree upon, and execute the specific procedures which will result in the non-recoverable destruction of all images and data provided under this order, and on all computers and computer components used to examine the materials provided under this order, with any disputes as to the appropriate destruction procedure to be resolved by the Court; and

(12) IT IS FURTHER ORDERED that any and all images and data remaining on any and all computers and computer components utilized to examine the materials provided under this order shall be deleted and overwritten in a manner rendering the images and data completely irretrievable in the future; and

(13) IT IS FURTHER ORDERED that a copy of this Order shall be served upon all counsel of record, via regular mail, within seven (7) days of the date of this Order

Honorable Donald J. Pgtrnell, P.J.S.C.