69 A.3d 559

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
BLAINE F. SCOLES, DEFENDANT–APPELLANT.

Argued January 2, 2013—Decided June 13, 2013.

*Bruce C. LiCausi* argued the cause for appellant (*Mr. LiCausi,* attorney; *Mr. LiCausi* and *Randall J. Peach,* on the briefs).

*Anthony A. Picione,* Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*Lawrence S. Lustberg* argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*Gibbons P.C.,* attorneys).

*Richard D. Pompelio* argued the cause for amicus curiae The New Jersey Crime Victims' Law Center.

Justice LaVECCHIA delivered the opinion for the Court.

In this criminal case, defendant is charged with endangering the welfare of a child based on allegations involving the email transmission of images of child pornography. A discovery dispute arose after the State declined to provide defendant's attorney with copies of the computer images, refused to allow defendant to view the images at all, and required the defense team to inspect the images only in the prosecutor's office. Defendant filed a motion to compel the prosecutor to provide copies of the images. The trial court denied the motion and entered a Protective Order, allowing defendant and his defense team access to the images subject to two conditions: the images could only be viewed on a computer housed at a state facility and access would be allowed within forty-eight hours after each request for inspection. In fashioning the Protective Order, the trial court sought to strike a balance between defendant's right under *Rule* 3:13-3 to discovery of the evidence against him in order to prepare a defense, and the State's arguments that the images were presumptively contraband, and that the public interest required protection of the child victims' rights to privacy and not to have the republication of images through state-sanctioned dissemination.

We granted leave to appeal. The discovery issue that we consider in this appeal has become a recurring one as prosecutions

involving child pornography have become more frequent. In our review of the terms of the Protective Order governing defendant's access to the evidence to be used against him, we are called on also to consider defendant's contentions that the State has not adopted a consistent approach to discovery requests involving computer images of child pornography and that, in resolving such discovery disputes, courts have responded with differing and inequitable treatment, unfairly burdening defendant's ability to prepare a defense.

Discovery disputes involving an accused's access to computer images of alleged child pornography require a consistent approach. For sure, defendants have a right to a fair trial, but the public has an interest in ensuring that evidence posing a real danger of harm to child victims is not disseminated without authorization. As important as it is to ensure the mandate of our state's open file approach to pretrial discovery in criminal matters, the security of evidence of child pornography also must be a paramount concern in resolving disputes over discovery access. The court must be satisfied that the evidence will be safeguarded from risk of dissemination beyond that necessary for use in preparing a defense to the charges. That said, we recognize that no uniform order can be rigidly prescribed in fairness to all interested parties.

Accordingly, we hold that trial courts must be allowed sufficient flexibility to act reasonably and responsively to safeguard this evidence in order to provide prophylactic protection against unwarranted dissemination of images of child pornography out of respect for the victims of such repugnant acts. In doing so, however, we must assure that a defendant and his or her defense team have meaningful access to the evidence to which they are entitled in order to muster their defense without unnecessary interference or intrusion. Through this opinion, a template is established for use by courts called on to strike a proper balance between a criminal defendant's important right to pretrial discovery and the societal interest in protecting child pornography

victims from the risk of unnecessary harm arising from the prosecution of criminal trials. In this particular matter, the Protective Order is set aside, and we remand for the trial court to reconsider the discovery motion in light of the principles announced herein.

## I.

The facts and procedural history to the underlying charges can be summarized as follows. In March 2010, the New Jersey State Police received a cyber tip from the National Center for Missing and Exploited Children. According to the tip, an America Online (AOL) user, with the screen name "tushlover@aol.com," had emailed a digital video file that contained suspected child pornography. The tip revealed that the email address belonged to defendant Blaine Scoles.

A police investigation stemming from that tip uncovered that defendant operated several AOL screen names. Law enforcement officers found evidence that at least five different video files and a number of photographs depicting child pornography had been emailed from the account identified in the tip or through screen names used by defendant.

Officers obtained a search warrant and, on December 17, 2010, searched defendant's residence, where they found further evidence of child pornography on a personal computer, a hard disk, and a flash drive. Defendant was arrested and charged with endangering the welfare of a child in violation of *N.J.S.A.* 2C:24–4(b)(5)(a) and (b).

On February 23, 2011, the prosecutor handling the case sent defense counsel a letter with instructions concerning discovery of the child pornography evidence. The prosecutor stated that (1) the evidence would not be copied, (2) defendant was personally prohibited from viewing the evidence, and (3) viewing would only be permitted by appointment at the prosecutor's office. Defendant responded by filing a motion to compel discovery pursuant to *Rule* 3:13–3. The motion included a request for a copy of the

photographs, video-clips, and any other evidence of child pornography so that defendant, his defense counsel, and a yet-to-be-determined defense expert could have access to the evidence in order to prepare a vigorous defense, including addressing whether the images were of real children.

The trial court held a hearing on the motion on June 22, 2011. After hearing arguments, the court issued an oral opinion. The court noted that the Appellate Division, in unpublished opinions, had issued inconsistent rulings as to whether a court could issue a protective order in response to a discovery request that requires a defendant and defense counsel, as well as any expert retained by defendant, to go to a prosecutor's office in order to view images of child pornography. The court reasoned that defendant had failed to articulate "why viewing a few images at the [p]rosecutor's office would impede his defense," that "[t]here has been no stated purpose by defense counsel or [d]efendant as to why there is a need, specifically, for these images to be copied at this time," and that defendant had not secured an expert.

In rejecting defendant's arguments in support of turning over copies of the evidence, the court stated that "[c]hild pornography is contraband, and possession of same is illegal." In balancing defendant's interest in preparing for trial and the need to protect the privacy of victims of sexual crimes, and to "minimize the risk of additional harm to them from further dissemination," the court stated that the scale tipped in favor of protecting the victims. Thus, the court required defendant, his defense counsel, and his experts to view the images only "at a State facility, on a State computer, with sufficient privacy so as not to interfere with any attorney-client discussion." The court stated that the identity of the expert need not be revealed to the State and added provisions for the expert to have access to equipment or software, at the state facility, if requested. Finally, the court ordered the prosecutor to make the evidence available to defendant within forty-eight hours of an inspection request. Accordingly, the court denied defendant's request for copies of the relevant photographs and

videos and set forth the terms of its holding in a Protective Order dated July 11, 2011.

On July 28, 2011, defendant filed with the Appellate Division a motion to stay the trial court's ruling and a motion for leave to appeal. Both motions were denied by order. Defendant then filed a motion for leave to appeal with this Court, which we granted. *State v. Scoles*, 208 *N.J.* 596, 34 *A.*3d 778 (2011). We also granted amicus curiae status to the Association of Criminal Defense Lawyers of New Jersey (ACDL) and to the New Jersey Crime Victims' Law Center (NJCVLC).

## II.

### A.

Defendant argues that the trial court order treated his discovery demand more restrictively than other criminal cases that involved evidence of alleged images of child pornography on or transferred by computer. In contrast to his own case, defendant points to a protective order issued in an earlier criminal matter involving child pornography charges against a public figure. Defendant claims that although the decision of the Appellate Division endorsing the pretrial discovery procedures in that matter was unpublished, the order was extensively publicized and is widely known in the legal community. Moreover, because the State was a party to that matter, defendant argues that the unpublished order should bind the State to the discovery practice contained therein.

The protective order in that earlier matter established procedures to safeguard the evidence while providing the defendant with access to the material to prepare his defense. In short, the order detailed the provisions for the handling, accessing, viewing, and eventual destruction of the evidence. For example, it prohibited the material from being "copied, reproduced, distributed, disseminated, electronically stored and/or electronically uploaded or downloaded," or used for any purpose other than the prosecu-

tion or defense of that action. The defense was required to use a dedicated, non-networked computer to view the materials, which was to be secured when not in use. The materials had to be conveyed by hand-to-hand delivery, and the order further provided that anyone viewing the materials on behalf of the defense would be subject to the order's terms. Defendant was not permitted to view the materials outside the presence of defense counsel, and the order required the parties to agree on specific procedures to ensure the material was irretrievably destroyed at the conclusion of the matter.

Defendant commends that discovery order as a sensible and protective template for addressing all interests in criminal trials involving alleged computer images of child pornography. He claims that his discovery demand should have resulted in entry of a substantially similar protective order.

### B.

The State argues that it is not seeking to restrict or limit the scope of discoverable material made available to the defense; it simply is seeking reasonable restrictions, already in use under federal law, on the method of providing discovery when images of child pornography are involved. Specifically, the State urges the Court to follow the approach taken by Congress in the Adam Walsh Act, 18 *U.S.C.A.* § 3509(m). Pursuant to the Adam Walsh Act, notwithstanding the federal rules governing discovery, "a court shall deny, in any criminal proceeding, any request by the defendant to copy . . . or otherwise reproduce any . . . material that constitutes child pornography . . . so long as the Government makes the property or material reasonably available to the defendant." § 3509(m)(2)(A). Under the Adam Walsh Act, material is "reasonably available to the defendant" if the prosecution "provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial."

§ 3509(m)(2)(B). According to the State, by adopting a similar approach, defendant will have access to view all that he seeks in preparation for trial; the only issues are where and under what conditions.

The State's argument dovetails with its position that the child pornography images are prima facie contraband and that it must avoid any further dissemination of the material. It contends that the Protective Order entered here maintains an appropriate close control over evidence of such nature. Moreover, the State argues that *Rule* 3:13–3(f) creates a general exception to the discovery rule in criminal matters and gives trial courts the power to deny, restrict, or defer discovery and inspection under certain circumstances by issuing a protective order. According to the State, the trial court's exercise of that power should remain within the sound discretion of the trial court. Here, the State claims no abuse of discretion occurred that justifies appellate interference with the trial court's adjudication of this discovery dispute.

### C.

Amicus ACDL argues that this case presents a question of critical importance to the defense bar because pretrial discovery procedures are vitally important in the growing number of child pornography prosecutions in New Jersey. The ACDL critiques the instant order as overly restrictive and unduly burdensome for a defendant attempting to craft a vigorous trial defense. The ACDL asserts that the State's recommended approach to the defense's pretrial access to this evidence would negatively impact a defendant's right and ability to retain experts in preparation of a defense and would invade the attorney-client and work-product privileges. The ACDL also argues that the State's position demeans criminal defense lawyers who should be trusted to comply with protective orders.

Amicus NJCVLC, aligned with the State in this matter, maintains that the State is not required to provide defendant with copies of the child pornography because it constitutes contraband.

It contends that providing copies of the evidence to defendant causes further victimization of the child victims in violation of their federal and state constitutional rights to privacy, citing *Griswold v. Connecticut*, 381 *U.S.* 479, 483, 85 *S.Ct.* 1678, 1681, 14 *L.Ed.*2d 510, 514 (1965), and of their state constitutional rights as crime victims to "be treated with fairness, compassion, and respect," citing *N.J. Const.* art. I, ¶ 22. NJCVLC encourages this Court to adopt for use in this state the process set forth in the Adam Walsh Act.

With those arguments informing us, we address the right to discovery in criminal matters generally and how that right should be accommodated within the discretion afforded to the trial court, on a showing of good cause, to guard against unnecessary harm brought about through a defendant's access to discovery.

### III.

Because of the meaningful role that the disclosure of evidence to a defendant has in promoting the search for truth, pretrial discovery in criminal trials has long received favorable treatment in this state. *See State ex rel. W.C. v. Walls*, 85 *N.J.* 218, 221, 426 *A.*2d 50 (1981) (noting sharing of pretrial information "encourage[s] the presentation of all relevant material to the jury as an aid in the establishment of truth through the judicial process"); *State v. Cook*, 43 *N.J.* 560, 564, 206 *A.*2d 359 (1965) (acknowledging that "discovery has long ... been found to be a sound tool for truth"). The sharing of pretrial information has received general support in recognition of its role in promoting a just and fair trial, for "[a]s Chief Justice Vanderbilt put it during the induction of the [modern] Supreme Court, '[l]itigation is no longer to be thought of as a battle of wits' and pretrial discovery procedures are to be directed towards 'facilitating the establishment of truth, which is the ultimate aim in the administration of justice.'" *Cook, supra*, 43 *N.J.* at 562–63, 206 *A.*2d 359 (quoting *Induction of the Supreme Court of New Jersey*, 2 *Rutgers U.L.Rev.*, Special Number 1948, at 59, 69). And a fair and just

criminal trial is not just the concern of the judiciary responsible for the administration of justice in the courts; it is a shared concern of both the defendant involved and the State: "The adversary system, modified in criminal matters as it is by the prosecutor's role to ensure 'that justice shall be done,' *Berger v. United States*, 295 *U.S.* 78, 88, 55 *S.Ct.* 629, 635, 79 *L.Ed.* 1314, 1321 (1935), is only a means to attain that goal." *Walls, supra*, 85 *N.J.* at 221, 426 *A.*2d 50.

To advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment. As codified, the New Jersey Court Rules presently demand [1] that the State will provide an indicted defendant with pretrial access to the evidence against him. *See R.* 3:13–3(b) (addressing indicted defendant's right to State's file). Indeed, consistent with the view that broad pretrial discovery beyond even that which the Court Rules require advances the quest for truth, it is well recognized that "[i]n general, a defendant in a criminal case is entitled to broad discovery." *State v. D.R.H.*, 127 *N.J.* 249, 256, 604 *A.*2d 89 (1992) (citing *R.* 3:13–3) (acknowledging court's ability to provide for discovery, beyond that required by court rule, as justice demands).

That said, pretrial discovery process and procedure in criminal matters is framed out through a broad governing court rule. Once an indictment has issued, a defendant has a right to automatic and broad discovery of the evidence the State has gathered in support of its charges. *R.* 3:13–3; *see* Pressler & Verniero, *Current N.J. Court Rules*, comment 3 on *R.* 3:13–3 (2013) ("Defendant's post-indictment right to discovery is automat-

---

[1] Historically, the discovery rules in criminal proceedings developed differently from the rules governing civil matters. *See Cook, supra*, 43 *N.J.* at 563, 206 *A.*2d 359. Although when originally codified, the criminal practice rules did not include a pretrial discovery provision, containing instead a general subpoena provision, pretrial discovery nevertheless was robust for the "omission of a specific discovery rule did not at all impair the inherent powers of the court to order discovery when justice so required." *Id.* at 563–64, 206 *A.*2d 359.

ic."). As relevant here, *Rule* 3:13–3(b) codifies the post-indictment procedure by which the file of evidence the State has gathered in support of its charges is made available to a defendant. The onus is on the State to make the full file available: "A copy of the prosecutor's discovery shall be delivered to the criminal division manager's office, or shall be available at the prosecutor's office, within 14 days of the return or unsealing of the indictment." *R.* 3:13–3(b). Defense counsel may obtain the file, on request, from the site housing the file. *Ibid.* Subsection (c) of the rule establishes further guidelines for discovery by the defendant:

> The prosecutor shall permit defendant to inspect and copy or photograph the following relevant material if not given as part of the discovery package under section (b):
>
> (1) books, tangible objects, papers or documents obtained from or belonging to the defendant;
>
> . . .
>
> (3) results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the matter or copies thereof, which are within the possession, custody, or control of the prosecutor;
>
> . . . .
>
> (5) books, papers, documents, or copies thereof, or tangible objects, buildings or places which are within the possession, custody or control of the prosecutor;
>
> [*R.* 3:13–3(c).]

Built into the criminal discovery rule, however, is a provision for protective orders to balance the defendant's right to discovery and the State's interest in protecting against certain harms. Subsection (f) provides:

> (1) Grounds. Upon motion and for good cause shown the court may at any time order that the discovery or inspection sought pursuant to this rule be denied, restricted, or deferred or make such other order as is appropriate. In determining the motion, the court may consider the following: protection of witnesses and others from physical harm, threats of harm, bribes, economic reprisals and other intimidation; maintenance of such secrecy regarding informants as is required for effective investigation of criminal activity; confidential information recognized by law, including protection of confidential relationships and privileges; or any other relevant considerations.
>
> (2) Procedure. The court may permit the showing of good cause to be made, in whole or in part, in the form of a written statement to be inspected by the court alone, and if the court thereafter enters a protective order, the entire text of the

statement shall be sealed and preserved in the records of the court, to be made available only to the appellate court in the event of an appeal.

[*R.* 3:13–3(f).]

By its plain language, subsection (f) authorizes a court to deny, restrict, or defer inspection of certain evidence to protect witnesses or others from harm or the threat of harm. As our Appellate Division has noted in the context of a similar discovery dispute over child pornography evidence that was unpublished at the time of the trial court's action, but which has been published at our request in order to highlight its comprehensive analysis of the issue presently before us,

> *Rule* 3:13–3 does not contain a specific restriction for disclosure of child pornography; however, the comment to *Rule* 3:13–3(f) provides examples of when discovery may be restricted, including: the identity of confidential informants; surveillance sites; parole records; school records; and even, to certain extents, instances when a claim of privilege will be waived at trial. Pressler, *Current N.J. Court Rules,* comment 6 on *R.* 3:13–3(f) (2009).
>
> [*State v. Cohen,* 431 *N.J.Super.* 256, 262, 68 *A.*3d 892, 895, 2013 *WL* 2629680 (App.Div.2009).]

As noted in *Cohen, supra,* 431 *N.J.Super.* at 262, 68 *A.*3d at 895, the protective provision of subsection (f) has been invoked to limit discovery in the related contexts of confidential Division of Youth and Family Services[2] records, *see State v. Cusick,* 219 *N.J.Super.* 452, 455–59, 530 *A.*2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987); *In re Z.W.,* 408 *N.J.Super.* 535, 539, 975 *A.*2d 938 (App.Div.2009), and school records of a child victim of sexual abuse, *State v. Krivacska,* 341 *N.J.Super.* 1, 35, 775 *A.*2d 6 (App.Div.), *certif. denied,* 170 *N.J.* 206, 785 *A.*2d 435 (2001), *cert. denied,* 535 *U.S.* 1012, 122 *S.Ct.* 1594, 152 *L.Ed.*2d 510 (2002). In limiting discovery in those instances, a balancing test was applied to the question of whether to allow access to otherwise confidential records, requiring the court to determine whether the defendant's need to prepare a defense outweighed the victim's right to confidentiality of the information. *See, e.g., ibid.* In this instance, we

---

[2] On June 29, 2012, the New Jersey Division of Youth and Family Services was renamed the Division of Child Protection and Permanency. *See L.* 2012, *c.* 16, § 20 (amending *N.J.S.A.* 9:3A–10(b)).

address evidence to which the State is willing to allow defense counsel access so long as it remains under the control of the State.

## IV.

In exercising the flexibility afforded to trial courts through subsection (f), there is no doubt that the court should recognize the harm to child victims that can occur through unauthorized republication of the images involved. Sexual abuse of a child has been described by the highest court of the land as "a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coal.*, 535 *U.S.* 234, 244, 122 *S.Ct.* 1389, 1399, 152 *L.Ed.*2d 403, 417 (2002). The State and amicus NJCVLC advance compelling arguments that children subjected to sexual abuse suffer "horrendous harm" and "detrimental humiliation," *State v. McCutcheon*, 234 *N.J.Super.* 434, 440, 560 *A.*2d 1303 (Law Div.1988), and that the emotional toll on its victims is exacerbated by its preservation in print or electronic form:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.
>
> [*New York v. Ferber*, 458 *U.S.* 747, 759 n. 10, 102 *S.Ct.* 3348, 3355 n. 10, 73 *L.Ed.*2d 1113, 1124 n. 10 (1982) (quoting David P. Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 *Wake Forest L.Rev.* 535, 545 (1981)).]

*See also Ashcroft, supra*, 535 *U.S.* at 249, 122 *S.Ct.* at 1401, 152 *L.Ed.*2d at 420 (observing that republication acts "[l]ike a defamatory statement ... caus[ing] new injury to the child's reputation and emotional well-being").

In recognition of that potential harm, the State and the NJCVLC urge this Court to follow the prophylactic controls adopted by Congress through the Adam Walsh Act to prevent and contain the redistribution of child pornography in preparation for and during criminal trials. Specifically, subsection (m) of the Adam Walsh Act provides:

(1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.

(2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.

(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

[18 *U.S.C.A.* § 3509(m).]

The advocates for this approach point out that several states have adopted the federal procedure as their own. *See, e.g., State v. Ross,* 792 *So.*2d 699, 702 (Fla.Dist.Ct.App.2001); *State v. Brady,* 119 *Ohio St.*3d 375, 894 *N.E.*2d 671, 679 (2008), *cert. denied,* 556 *U.S.* 1241, 129 *S.Ct.* 2389, 173 *L.Ed.*2d 1304 (2009); *State v. Bowser,* 321 *Wis.*2d 221, 772 *N.W.*2d 666, 670 (Ct.App.), *review denied,* 322 *Wis.*2d 124, 779 *N.W.*2d 177 (2009).

V.

A.

We are not compelled to follow the federal statutory approach to the sharing of pretrial criminal discovery in matters involving computer images of child pornography. The Adam Walsh Act is limited by its own terms in subsection (m) to federal prosecutions. *See State ex. rel Tuller v. Crawford,* 211 *S.W.*3d 676, 679 (Mo.Ct.App.2007); *see also United States v. Spivack,* 528 *F.Supp.*2d 103, 105 (E.D.N.Y.2007) (interpreting Adam Walsh Act as amending Federal Rule of Criminal Procedure 16); *United States v. Knellinger,* 471 *F.Supp.*2d 640, 642–43 (E.D.Va.2007) (discussing applicability of Adam Walsh Act to federal government and amendment to Federal Rules of Criminal Procedure). A majority of states that have considered whether to incorporate the federal approach have determined not to do so, opting in favor of

procedures requiring the prosecution to reproduce the materials for defendant's use and control in the preparation of a defense. *See, e.g., Cervantes v. Cates,* 206 *Ariz.* 178, 76 *P.*3d 449, 456–57 (Ct.App.2003); *Westerfield v. Superior Court San Diego Cnty.,* 99 *Cal.App.*4th 994, 121 *Cal.Rptr.*2d 402, 405 (2002); *Tennille v. State,* 279 *Ga.* 884, 622 *S.E.*2d 346, 348 (2005); *State v. Second Judicial Dist. Court,* 120 *Nev.* 254, 89 *P.*3d 663, 668–69 (2004); *State v. Boyd,* 160 *Wash.*2d 424, 158 *P.*3d 54, 62 (2007); *Commonwealth v. Ruddock,* 26 *Mass. L. Rep.* 175 (Super.Ct.2009).

 In assessing that terrain, the number of decisions on one side of the scale versus the other matters less than adherence to our longstanding case-law view in favor of the exchange of pretrial discovery and the court rule that makes pretrial access to the evidence a critical right for all defendants. *See State v. Broom–Smith,* 406 *N.J.Super.* 228, 239, 967 *A.*2d 359 (App.Div.2009), *aff'd,* 201 *N.J.* 229, 989 *A.*2d 840 (2010). The rule creates a presumption of access to the file and to copies of the evidence, which results either in the complete turnover of the material or in restricted access when necessary, among other reasons, to protect against identifiable harm to a witness or another. *See R.* 3:13–3(f).

Thus, we turn to the application of the general right to discovery as it intersects with the flexibility afforded to the trial court, on a showing of good cause, to guard against unnecessary harm brought about through a defendant's access to discovery.

### B.

 As defendant and the ACDL point out, computer images of child pornography do not necessarily depict an actual child; some child pornography is computer-created virtual imagery. It must be proved by the State, not assumed by the court when assessing discrete discovery disputes, that an image involves an actual child. Although there undoubtedly will be instances when the parties concede that the computer image is one of a real and known child, the dispute or lack thereof is a factor in the court's consideration.

 That said, even when there exists a dispute over whether the image is that of a real and actual child victim, the potential for re-victimizing a victim is a matter of grave concern to this Court. In considering how re-victimization can and should be avoided through the efforts of the courts, one alleged harm that is not legitimate and must be separated from legitimate concerns is the actual handling of the evidence of child pornography by the defense team, including potential experts to be used by defendant, at trial or otherwise retained in the development of a defense.

 The Sixth Amendment to the United States Constitution guarantees a defendant the unfettered access and assistance of his counsel. *Marshall v. Rodgers*, 569 *U.S.* ——, ——, 133 *S.Ct.* 1446, 1449, 185 *L.Ed.2d* 540, 544 (2013) ("It is beyond dispute that [t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." (internal quotations omitted)); *State v. Nash*, 212 *N.J.* 518, 541, 58 *A.3d* 705 (2013) ("The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee that, in a criminal proceeding, the accused shall have the right to the assistance of counsel in his defense."). That right clearly extends to the assistance of experts to aid in the accused's defense. *State v. DiFrisco*, 174 *N.J.* 195, 244, 804 *A.2d* 507 (2002) ("We find no reason to depart from our precedent ... that [has] analyzed the right to effective assistance of experts as part of a defendant's right to the effective assistance of counsel."); *State v. Mingo*, 77 *N.J.* 576, 584–87, 392 *A.2d* 590 (1978) (recognizing essential importance of communication with expert in defense preparation). Thus, the examination of child pornography evidence by professionals employed by defendant as part of the attorney-client relationship cannot legally be considered dissemination of contraband subject to prosecution when it is sanctioned by a court rule or order of the court. Courts considering the question of an expert's access to child pornography evidence, even in the context of the Adam Walsh Act, have acknowledged the need to permit

defense expert access to child pornography evidence exchanged in discovery. *See United States v. Shrake*, 515 *F.*3d 743, 744–47 (7th Cir.2008) (recognizing that, even though it applies to prohibit copying of files, Adam Walsh Act does not restrict defendant's expert from inspecting files); *Brady, supra*, 894 *N.E.*2d at 679 (holding that Adam Walsh Act does not prohibit inspection by defense expert).

A protective order, restricting access to the defense team (members of whom the State concedes can view the materials), can identify the safeguards necessary to ensure that the materials are not shared intentionally, or through accidental breach that is preventable, beyond the specific limits imposed on the defense. *See United States v. Frabizio*, 341 *F.Supp.*2d 47, 51 (D.Mass.2004); *Alexander Props. Grp., Inc. v. Doe*, 280 *Ga.* 306, 626 *S.E.*2d 497, 500 (2006). It is the details to the safeguards in a protective order that are critical. We presume, based on the professionalism of the New Jersey criminal defense bar, that we can expect strict adherence to the terms of a court-issued protective order that releases copies of computer images of alleged child pornography to the defense for use in testing the State's allegations and preparing a defense for the accused.

We do not question the professionalism of the criminal defense bar. Rather, we must assess whether the defense counsel retained by a defendant has the practical capacity to comply with technical restrictions that the court should impose to maintain the security of the copies of computer images provided to the defense team. In balancing a defendant's right to pretrial discovery of computer images of alleged child pornography and the societal interest in inhibiting the risk of re-victimization of actual child victims, we hold that when counsel requests access to discovery in their office, through copies of the images released to their custody, they must demonstrate their ability and willingness to abide by stringent conditions of control before their request will be granted.

## C.

In order to guide courts in the analysis that is germane in these types of discovery disputes, the following process should be employed by the court.

1) At the outset, defense counsel will have the slight burden of requesting to have access to the computer images in their office. This request obligation is intended merely to identify which cases will require further discovery proceedings. The request need not demonstrate why counsel wants access in his or her office, and courts are not to require a showing of need by the defendant as to why the defense must view the material in his or her office. The defense is entitled to the discovery. It is not incumbent on the defense to explain why it will be inconvenienced in its preparation for trial by the State's offer to allow the evidence to be viewed in a state facility. Imposing that burden on the defense subverts the open file approach to discovery in criminal trials. However, unless counsel affirmatively requests that copies be provided to use in preparation of a defense, counsel will presumably review the materials in a state facility.

We choose this approach to make clear that the State need not automatically turn over alleged child pornography without the enhanced safeguards as follows.

2) After counsel files such a request, the court should schedule a case management conference, followed by a colloquy on the record. At the conference, defense counsel must demonstrate the ability to comply with the terms of a court-issued protective order designed to secure the computer images from intentional and unintentional dissemination beyond those individuals authorized by the court to make use of the material. As a starting point, we direct that the court's protective order should closely track the following restrictions on the handling of computer images of alleged child pornography, which were first employed in the *Cohen* matter.

The order should require several protections:

a. The State should provide copies of all computer images and data to defense counsel, with a provision that the materials are not to be copied, reproduced, distributed, disseminated, electronically stored and/or electronically uploaded or downloaded, or used for any purpose other than the prosecution or defense of the underlying action;

b. The order also should require that the defense use a dedicated computer, which is not connected to the Internet, a network, or a printer, to view the materials, and the computer must be locked and secured when not in use;

c. The images and other data should be conveyed to and among defense counsel and defense experts by hand-to-hand delivery, and the materials should be reconveyed to the State in the same manner at the conclusion of the matter;

d. Anyone viewing the material on behalf of the defense should be furnished with a copy of the order and will be subject to its terms;

e. Agreements between defense counsel and their experts should include a provision certifying that the expert acknowledges the terms of the protective order;

f. The defendant shall not be permitted to view the materials outside the presence of defense counsel; and

g. At the conclusion of the matter, the parties should agree upon specific procedures to ensure that the materials are completely and irretrievably deleted from any computers on which the materials were viewed.

We approve those terms not as a one-size-fits-all-circumstances order but as one that frames the type of considerations and details for the court to demark before it releases copies of computer images of alleged child pornography to defense counsel. The above framework provides an appropriate starting point for courts to use; however, we leave to the court's discretion the adjustment of that form of protective order as the court determines necessary to the circumstances presented. We do so to promote consistency and a more uniform approach to discovery throughout the state in criminal matters involving child pornography evidence. To be certain, these safeguards provide the minimum protection to be ordered; further protections may be devised as required by the facts of each case, advances in technology, or other unforeseen factors demanding consideration by our courts.

In addition to the required demonstration by counsel, we require that, in open court, counsel certify that he or she can and will abide by the terms of the protective order proposed by the court.

██ Finally, if counsel cannot satisfy these procedural, yet essential, practical requirements, then the discovery materials are to be available for review only at a state facility.

██ 3) In those instances when discovery material is to be viewed at a state facility, greater access and flexibility must be made available to the defense team as the trial date approaches. The forty-eight hour response time to a request for access to evidential material, as was included in the Protective Order in the instant matter, is wholly unacceptable as trial nears. Such a response time could unduly inhibit an attorney's work. We cannot sanction such a lengthy delay as the start of trial approaches and counsel's prompt access to the material may be needed to properly assist the client with effective representation.

## D.

██ In the instant matter, neither the trial court nor counsel had the benefit of the process we set forth herein. As a result, the proceedings below could not be expected to comply with the process or the procedural and substantive safeguards established by this opinion. It is impossible to determine, from this record, whether standards required for safeguarding the evidence sought through pretrial discovery in this matter can be satisfactorily demonstrated. In fairness to all, the Protective Order entered must be set aside, and defendant's application must be considered anew in remand proceedings conducted consistently with this opinion. The court's proceeding must focus not on defendant's need for the material. Rather, the court must determine, consistent with the procedure set forth herein, whether the requested copies of computer images can be released safely to the defense's care and custody.

## VI.

The Protective Order of the trial court is vacated, and the matter is remanded to the trial court for further proceedings.

*Vacate and Remand*—Chief Justice RABNER, Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, Judges RODRÍGUEZ (temporarily assigned), and CUFF (temporarily assigned)—7.

*Opposed*—None.