# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0790-17T4

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

M.S.,

     Defendant-Respondent.

_____

> Argued September 13, 2018 – Decided December 3, 2018
>
> Before Judges Alvarez, Nugent, and Reisner.
>
> On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-04-1020.
>
> Kayla Elizabeth Rowe, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Theodore N. Stevens II, Acting Essex County Prosecutor, attorney; Kayla Elizabeth Rowe, of counsel and on the briefs).
>
> Tamar Y. Lerer, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Tamar Y. Lerer, of counsel and on the brief).

PER CURIAM

The State was granted leave to appeal an interlocutory order compelling it to produce in discovery an unredacted version of the cell phone text messaging history of O.R., defendant M.S.'s alleged victim, from September 10, 2015, to September 28, 2015, along with a log of O.R.'s calls from September 15, 2015, to September 28, 2015. We now affirm the trial court's January 12, 2018 decision, except we modify the order with regard to the dissemination of information.

We summarize the facts alleged in the parties' briefs, since no sworn testimony has yet been taken. O.R. and defendant were friends, and on September 15, 2015, were talking while lying on defendant's bed. O.R. had smoked marijuana earlier that evening, was tired, and fell asleep. She awakened sometime later to find defendant, naked, on top of her. He had pulled down her leggings, and she felt moisture between her legs. O.R. told defendant to get off, and, at her request, he drove her home. That morning, O.R. went to a nearby hospital where a rape kit was completed. Police were notified, and a complaint was filed against defendant.

A-0790-17T4

As is customary for the Essex County Prosecutor's office, on September 28, 2015, investigators requested that O.R. turn over her cell phone. The following day, the department compiled a 242-page extraction report.

Defendant was charged by way of superseding indictment with two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7), and two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1). After motion practice and corresponding emergent applications for leave to appeal, the trial judge eventually ruled that defendant's need for the unredacted extraction report outweighed O.R.'s privacy rights and ordered that the document be produced.

The extraction report included a call log from September 15, 2015, through September 28, 2015, consisting of 500 incoming and outgoing calls in reverse chronological order.[1] The State redacted all of the names and telephone numbers, except for thirteen calls to "Bae"[2] and one call from "Bae" in the two

---

[1] We avoid details regarding the unredacted extraction report to avoid prejudice to the State's position in the event of a further appeal. However, to put the controversy in context, we describe the extent to which the State redacted the report, leading to defendant's discovery motion.

[2] The State's explanation of the abbreviations, provided to the court under seal, advises that "Bae is an acronym for 'before anyone else,' usually referring to a person's significant other."

A-0790-17T4

days following the alleged incident, and all calls to and from defendant, who was listed as "Om" in O.R.'s phone. Following the call log is a list of the 156 contacts programmed in O.R.'s phone, all of which were redacted except for defendant, "Bae," and "Rodriguez Det P."

The report also contained ninety-two MMS messages,[3] in reverse chronological order, with the contact information and content redacted from each message. An additional 1333 SMS messages[4] were listed in reverse chronological order. The contact information, SMSC field,[5] and content were redacted from the majority of the messages except for the messages exchanged by O.R. and defendant. Some messages from September 14 were not redacted and most, but not all, of the messages sent and received on September 15 and September 16 were not redacted.

The State redacted one audio file and all of the images and video files. The next section, listing the names and phone numbers with which O.R.

---

[3] "MMS" stands for "multimedia messaging service" and includes picture and video messages.

[4] "SMS" stands for "short message service" and includes text messages.

[5] "SMSC" stands for "short messaging service center," which is part of the wireless network that handles text messages, including routing, forwarding, and storing them on the way to their recipients.

A-0790-17T4

communicated, was entirely redacted except for defendant's name and number, as well as that of "Bae." In this section, and the final section entitled "Analytics Phones," the State inconsistently redacted information, leaving some contacts in one section of the report while removing them from another section. Some of the contacts appeared to be of persons with whom O.R. might have communicated about her interactions with defendant.

I.

Our premise that the contents of O.R.'s cell phone, including text messages and the call log, are entitled to the same privacy protection as letters, or personal calls, or a diary, is drawn from well-established precedents, beginning with Riley v. California, 134 S. Ct. 2473 (2014). In Riley, police conducted an unauthorized examination of Riley's cell phone, including a wholesale search for evidence of gang activities. Id. at 2481. The Court reversed the denial of Riley's motion to suppress the evidence, employing classic Fourth Amendment doctrine—that a search requires a warrant except where "it falls within a specific exception." Id. at 2482. The Court reasoned that the search incident to arrest doctrine should not be applied to the contents of modern cell phones, "now such a pervasive and insistent part of daily life that the

A-0790-17T4

proverbial visitor from Mars might conclude they were an important feature of human anatomy." Id. at 2484.

The Court observed that cell phones contain a treasure trove of personal information regarding the most intimate details of the owner's life. Ibid. As the Court also observed, quoting a 1926 opinion authored by Learned Hand, it is a "totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." Id. at 2490-91 (quoting United States v. Kirschenblatt, 16 F.2d 202, 203 (2d Cir. 1926)). A search of a cell phone would not only reveal "many sensitive records previously found in the home[,]" but also "a broad array of private information never found in a home in any form." Id. at 2491.

Drawing from Riley, if the contents of a suspect's cell phone are entitled to Fourth Amendment protection, a victim should be accorded corresponding privacy protection. A victim has the same interest in keeping the highly personal information found in a cell phone out of sight of the public in general and those she has accused of committing a crime against her in particular. The State contends that providing defendant with the unredacted extraction report would be like allowing defendant to ransack the victim's house for everything it may contain that could be used by defendant in building a defense. The nature of the

charge—a sexual assault—only heightens the tension between defendant's right to open file discovery and his Sixth Amendment right to counsel, and O.R.'s right to privacy. See State v. Scoles, 214 N.J. 236, 253-54 (2013). Typically, because of the nature of the crime, sexual assault cases are treated with heightened sensitivity, such as the use of initials to protect the complainant's identity.

Additionally, the Victim's Rights Amendment to the New Jersey Constitution is implicated and establishes a baseline. Victims in our system "shall be treated with fairness, compassion and respect by the criminal justice system." N.J. Const. art. 1, § 22. By statute and the Crime Victim's Bill of Rights, victims are entitled "[t]o be treated with dignity and compassion by the criminal justice system[,]" and "[t]o be free from intimidation[.]" N.J.S.A. 52:4B-36.

Those rights require particular attention in sexual assault cases where there is a heightened "need to protect victims and witnesses from emotional trauma, embarrassment, and intimidation." State v. Gilchrist, 381 N.J. Super. 138, 147 (App. Div. 2005). But victims' rights do not "diminish those rights possessed by the accused facing a criminal prosecution." State ex rel. A.B., 219 N.J. 542, 558 (2014).

To harmonize those rights when a discovery request does not neatly fall into the automatic discovery rule requires balancing the right to a fair trial against a victim's right to privacy. Id. at 547. A defendant must demonstrate that the discovery is "justified" and meets an evidentiary burden on a sliding scale "in direct proportion to the nature and extent of the intrusion." Id. at 556-57.

That O.R. voluntarily turned her phone over to the prosecutor's office does not affect the calculus. We do not know if she was advised that others besides law enforcement would have access to the information it contained, or if she was even told the nature of the information that would be drawn from it. Thus, we approach the issues the State raises on appeal from the perspective that O.R. has a right to privacy that must be balanced against defendant's right to discovery.

II.

That balance must be made against the backdrop that appellate courts "accord substantial deference to a trial court's issuance of a discovery order and will not interfere with such an order absent an abuse of discretion." State v. Hernandez, 225 N.J. 451, 461 (2016). We do not defer, however, if the discovery order is based on a mistaken understanding of the applicable law,

including the trial court's interpretation of a court rule. <u>Ibid.</u> As always, we review issues of law de novo. <u>See</u> <u>ibid.</u>

New Jersey courts "do not countenance trial by surprise." <u>A.B.</u>, 219 N.J. at 555. "Because of the meaningful role that the disclosure of evidence to a defendant has in promoting the search for truth, pretrial discovery in criminal trials has long received favorable treatment in this state." <u>Scoles</u>, 214 N.J. at 251. A trial in which a criminal defendant "does not have 'access to the raw materials integral to the building of an effective defense' is fundamentally unfair." <u>A.B.</u>, 219 N.J. at 556 (quoting <u>Ake v. Oklahoma</u>, 470 U.S. 68, 77 (1985)). Thus, to "advance the goal of providing fair and just criminal trials[,]" New Jersey has adopted an "open-file approach to pretrial discovery in criminal matters. <u>Hernandez</u>, 225 N.J. at 461-62 (quoting <u>Scoles</u>, 214 N.J. at 252); <u>R.</u> 3:13-3.

<u>Rule</u> 3:13-3(b) requires the State to provide "exculpatory material" to the accused including, but not limited to:

> books, papers, documents, or copies thereof, or tangible objects, buildings or places which are within the possession, custody or control of the prosecutor, including, but not limited to, writings, drawings, graphs, charts, photographs, video and sound recordings, images, electronically stored information, and any other data or data compilations stored in any

9

> medium from which information can be obtained and translated, if necessary, into reasonably usable form[.]
>
> [R. 3:13-3(b)(1)(E).]

In addition, "courts are empowered to order discovery beyond that mandated by our court rules when doing so will further the truth-seeking function or ensure the fairness of a trial." Hernandez, 225 N.J. at 463 (quoting A.B., 219 N.J. at 560).

"Relevance is the touchstone of discovery." Id. at 468. Thus, "discovery in a criminal case 'is appropriate if it will lead to relevant' information." Id. at 462 (quoting State v. Ballard, 331 N.J. Super. 529, 538 (App. Div. 2000)). Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. "[I]f evidence is relevant and necessary to a fair determination of the issues, the admission of the evidence is constitutionally compelled." State v. Garron, 177 N.J. 147, 171 (2003).

While criminal discovery in New Jersey is expansive, nothing "sanction[s] rummaging through irrelevant evidence." Hernandez, 225 N.J. at 463. A defendant may not "transform the discovery process into an unfocused, haphazard search for evidence." State v. D.R.H., 127 N.J. 249, 256 (1992). Courts must be cognizant of "the chilling and inhibiting effect that discovery

can have on material witnesses who are subjected to intimidation, harassment, or embarrassment." Ibid.

The showing a defendant must make increases with the nature of the intrusion resulting from the discovery. In this case, a heightened showing must be made in order to justify the intrusion into O.R.'s right to privacy. This showing is not as great as, for example, when a defendant seeks to have a child medically examined who is a sex abuse victim. See A.B. 219 N.J. at 557. But a defendant must show at least a substantial need. In other words, defendant must establish that the intrusion is warranted because the information will lead to relevant evidence on a material issue.

Here, after our in camera review of the unredacted extraction report, we are convinced it may well lead to relevant information. O.R. said the sexual assault occurred during the late night hours of September 15 or early morning hours of September 16, 2015, after she fell asleep. Defendant claims that they had a consensual encounter, and further alleges that O.R. fabricated the sexual assault claim because she feared "Bae" would find out they had relations. It is almost self-evident that texts O.R. sent and calls she made within the immediate hours before and after the assault may be relevant, and that defendant may wish to interview those persons with whom she made contact.

The State is obligated in discovery to provide "'material evidence affecting [the] credibility' of a State's witness whose testimony may be determinative of guilt or innocence." Hernandez, 225 N.J. at 462 (alteration in original) (quoting State v. Carter, 69 N.J. 420, 433 (1976)). O.R. is the key State's witness whose testimony, if believed, will determine the verdict. The State redacted numerous texts, some of which could offer defendant lines of investigation into O.R.'s credibility. We offer no examples of the unredacted materials for the reason stated at the beginning of this decision, but enumerate the rules and statutes that similarly situated defendants frequently raise: N.J.R.E. 404(a)(2), which provides that "[e]vidence of a pertinent trait of character of the victim offered by an accused" is admissible to show that the victim acted in conformity therewith; N.J.R.E. 608(a), which provides that opinion and reputation evidence is admissible to attack the character of a witness for untruthfulness; and the Rape Shield Law, N.J.S.A. 2C:14-7. Even if the cell phone information or the results of any further investigation based upon it may ultimately be inadmissible, full and open discovery requires the production of the unredacted report.

The State relies heavily upon State v. J.A.C., 210 N.J. 281 (2012), in support of its position that the redacted information suffices. In that case,

however, the dispute related to the admission of evidence barred by the Rape Shield Law, not its production in discovery. See id. at 287. In this case, the State is seeking to keep defendant from having access to the redacted information altogether. The redacted material, however, is relevant and is therefore at least discoverable. The admissibility of any evidence, also left to the trial court, is an entirely different matter. Our decision does not touch upon that exercise of discretion. See id. at 295-96.

## III.

The State contends that the issue is not whether O.R. has a right to privacy in need of protection— there can be no dispute that she does—but whether the sacrifice of her privacy will advance "the truth-seeking function or ensure the fairness of a trial." A.B., 219 N.J. at 560. The trial court balanced O.R.'s right to privacy against defendant's right to confrontation as guaranteed under the Sixth and Fourteenth Amendments, concluding that the harm to O.R. of allowing defendant access to the unredacted extraction report was outweighed by the benefit of full discovery.

We understand, as defense counsel said during oral argument, that because of defendant's lack of specific information regarding the contents of the unredacted extraction report it is difficult to address materiality. However, it is

13

not unreasonable at all, and certainly not speculation, to argue that the unredacted cell phone extraction report could contain information that will help or hurt defendant's case. It provides information which, even if not useful for some actual trial purpose, will enable defendant to realistically assess the strengths and weaknesses of the State's case, and of any plea offers that may be made. Simply stated, it is reasonably likely that the redacted material has probative value to a material issue. See id. at 557.

The State further contends that Gilchrist bars disclosure of the unredacted report. In that case, however, the trial judge ordered a photograph taken of the victim so that the defendant could determine whether he was acquainted with her because her relationship to him might provide a motive for the accusation. 381 N.J. Super. at 140-41. Since the perpetrator in that case had threatened to kill the victim if she went to the police, she was understandably apprehensive. The victim feared that defendant's access to her photograph would make it possible for him to make good on the threat. Id. at 142. We reversed. Id. at 148.

In this case, there is no comparable justification for barring defendant's access to the unredacted extraction report. O.R. has not expressed any fear of retribution, and after the incident, defendant drove her home at her request. The

record is devoid of any indication that defendant has at any time attempted to intimidate O.R. Gilchrist is inapposite.

The State's reliance on United States v. Swartz, 945 F. Supp. 2d 216, 221-22 (D. Mass. 2013), is similarly misplaced. In that case, the defendant's estate sought disclosure of unredacted discovery materials to Congress and the public. Id. at 217. That is not an issue in this case. No wholesale or public disclosure is being ordered.

Knowing the risks attendant to compelling the State to produce the report, however, it shall be disclosed to defense counsel, counsel's investigators, and defendant only. The discovery order must prohibit dissemination of the information except as necessary for investigation. Defendant shall not be given a hard copy of the unredacted report. He can review it with his counsel, but there is no need for him to have a physical record of phone numbers O.R. called or texts she sent. He is barred from discussing the contents of the report with anyone other than his attorney or attorney's staff. Other than those permitted discussions, defendant is also barred from disclosing or disseminating the report's contents in any fashion, including emails or internet postings.

15

## IV.

The State also asserts that the disclosure of the unredacted extraction report will infringe upon the privacy rights of third parties who were not involved in the incident and could not have anticipated disclosure of their communications with O.R.  Our Court has been sensitive regarding the privacy rights of third parties when discovery, including their information, must be produced.  State v. Stein, 225 N.J. 582, 597 (2016).  But Stein did not consider whether being contacted by a defense investigator infringes upon a third party's right to privacy.  The issue was whether the State had to turn over police station videotapes of defendant that depicted others whose presence was irrelevant to the proceedings.  Id. at 597.

In this case, there is no other practical means for the defense to investigate anything regarding O.R.'s communications with third parties related to the sexual assault without the State at least disclosing their identities.   Weighing the privacy interest of third parties against the defendant's right to investigate in preparation for trial, defendant's trial preparation interest is paramount.  This is no different than if, for example, O.R. had named persons with whom she discussed the incident.  Those persons also lose their anonymity.

16

Thus, we conclude that our strong open-file discovery precedents justify the trial court's resolution of this issue and the decision is therefore entitled to deference. See Hernandez, 225 N.J. at 461.

We reiterate that copies of the unredacted extraction report shall be supplied only to defense counsel and counsel's staff. No copy shall be provided to defendant, who is also barred from discussing its contents with anyone other than counsel or counsel's investigator. This limitation applies only to material not admitted as evidence at trial, as obviously the public nature of the proceeding makes the limitation unnecessary as to trial information.

Affirmed in part, modified in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0790-17T4