NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2882-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HERBY V. DESIR, a/k/a
JOHNATHAN DESIR,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 8, 2019

APPELLATE DIVISION

Submitted September 25, 2019 – Decided October 8, 2019

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-09-0626.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

After the trial judge denied his motion to compel the State to provide him with discovery, defendant Herby V. Desir pled guilty to second-degree possession of "Methylenedioxy-N-ethylcathinone (MDEC/Ethylone)," a Schedule I narcotic drug, with the intent to distribute it in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(4).[1]  Defendant reserved the right to appeal from the denial of his motion to compel discovery and his motion to suppress evidence seized during the execution of the search warrant.  In accordance with the negotiated plea, the judge sentenced defendant to seven years in prison with three-and-one-half years of parole ineligibility.

On appeal, defendant raises the following contentions:

> POINT I
>
> THE MOTION FOR DISCOVERY OF THE LAB REPORTS[,] TELEPHONE NUMBERS, AND RECORDATION OF THE CONVERSATIONS AND/OR TRANSACTIONS SHOULD HAVE BEEN GRANTED AND THE MOTION TO SUPPRESS REOPENED AS THE DISCLOSURE OF THE SOUGHT AFTER DISCOVERY (OR THE IN CAMERA REVIEW) WOULD NOT HAVE REVEALED ANY CONFIDENTIAL INFORMATION.  MOREOVER, THE PRINCIPAL DECISION RELIED UPON BY THE JUDGE, STATE V. BROOM-SMITH, 406 N.J. SUPER. 228 (APP. DIV. 2009), [aff'd, 201 N.J. 229 (2010),] IS

---

[1]  According to the affidavit submitted in support of the search warrant involved in this case, this drug is commonly known as "Molly."

EASILY DISTINGUISHABLE FROM THE CASE AT HAND.

POINT II

THE COURT FAILED TO PROPERLY CONSIDER THE AGGRAVATING AND MITIGATING FACTORS AND IMPOSED AN[] EXCESSIVE SENTENCE AND PERIOD OF PAROLE INELIGIBILITY.

After reviewing the record in light of the contentions advanced on appeal and the applicable law, we reverse and remand for further proceedings.

To place the salient issues in the proper context, we begin by reviewing the unusual procedural history of this matter. During the week of April 27, 2015, a detective received information from a confidential informant, who had provided information leading to arrests in prior cases. According to the detective's affidavit in support of a search warrant application, the informant claimed that defendant was storing and selling large amounts of "Molly" in his home. The informant also alleged that defendant had at least two handguns and was offering to sell them.

The detective stated he met with the informant sometime during the next week to "conduct[] a consensually intercepted telephone communication" between the informant and Desir. The informant then had two telephone conversations with defendant in the detective's presence. During these calls, the informant and defendant discussed the availability of "Molly" and

defendant told the informant to come to his residence. Defendant also stated that he had "firearms[] available to sell."

Before following the informant to defendant's home, the detective searched the informant and found that he was not carrying any drugs or money. The informant entered defendant's home and, after he left, the detective followed him to a pre-arranged meeting spot. Once there, the informant gave the detective an "item, suspected to be 'Molly[.]'" The detective searched the informant and found that the informant was not carrying any other drugs, and had no money in his possession. In his affidavit, the detective stated "[t]he suspected 'Molly' obtained from [defendant] was submitted to the Union County Prosecutor's Office Laboratory where it was analyzed and tested positive for Ethylone, a Schedule I controlled dangerous substance."

Based upon the detective's affidavit, a judge granted a no knock search warrant to the detective for defendant's home. During the search that followed, the police recovered 125 ounces of "Molly," a handgun, hollow point bullets, currency, and drug paraphernalia.

Thereafter, a Union County grand jury returned a six-count indictment charging defendant with third-degree possession of "Molly," N.J.S.A. 2C:35-10(a)(1) (count one); second-degree possession of "Molly" with intent to distribute it, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(4) (count two);

third-degree possession of "Molly" with the intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7 (count three); second-degree possession of "Molly" with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1 (count four); second-degree possession of a firearm in the course of committing a drug offense, N.J.S.A. 2C:39-4.1(a) (count five); and fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f) (count six).

Once the indictment was filed on September 18, 2015, and in accordance with the "right to broad discovery" afforded defendants in criminal cases, State v. Hernandez, 225 N.J. 451, 461 (2016), the State was required to deliver its discovery to the criminal division manager's office, or make it available at the prosecutor's office. R. 3:13-3(b). The defendant's right to "broad discovery of the evidence the State has gathered in support of its charges" is "automatic[.]" State v. Scoles, 214 N.J. 236, 252 (2013) (citing R. 3:13-3). This "'open-file approach to pretrial discovery in criminal matters' is intended '[t]o advance the goal of providing fair and just criminal trials.'" Hernandez, 225 N.J. at 461-62 (alteration in original) (quoting Scoles, 214 N.J. at 252).

According to defense counsel, the State did not provide defendant with the laboratory report detailing the test results of the suspected "Molly" the informant gave the detective who prepared the search warrant application, or

any "property and evidence sheets related to the submission of the substance for testing[.]" The State also did not give defendant any "recordings of the purported consensual intercepts" the detective listened to prior to seeking the warrant. Therefore, defense counsel made a written request for these items. In doing so, the attorney stated he understood these materials might need to be redacted if they would reveal the informant's identity, and he also proposed that the items could be submitted to the court for an in camera review. The State did not respond to this request.

On July 20, 2016, defendant filed a motion to suppress the contraband seized during the execution of the search warrant. Through counsel, defendant argued the State failed to establish probable cause to obtain the warrant, and argued that the detective's affidavit was "so defective and/or made with reckless disregard for truth that the judge who signed the warrant could not possibly have fairly evaluated the existence of probable cause."

To establish this point, defendant sought a Franks[2] hearing. In Franks, the United States Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the

_____

[2] Franks v. Delaware, 438 U.S. 154 (1978).

A-2882-17T4

finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

[438 U.S. at 155-56.]

However, "[s]uch a hearing is required only if the defendant can make a substantial preliminary showing of perjury." State v. Howery, 80 N.J. 563, 583 n.4, (1979).

"The limitations imposed by Franks are not insignificant." Id. at 567. The burden placed on the defendant is onerous because "a Franks hearing is not directed at picking apart minor technical problems with a warrant application[,]" but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents[.]" State v. Broom-Smith, 406 N.J. Super. 228, 240 (App. Div. 2009), aff'd 201 N.J. 229 (2010). Thus, a defendant must identify "with specificity the portions of the warrant that are claimed to be untrue" and support the allegations with "an offer of proof including reliable statements by witnesses, [which] must be proved by a preponderance of the evidence." Howery, 80 N.J. at 567-68 (citation omitted).

In this case, defendant's task was made even more onerous because the State had still not responded to defendant's request for specific information about the warrant application, including a copy of the laboratory report. In this regard, defendant alleged that he never sold "Molly" to anyone as alleged

in the affidavit and he questioned whether a laboratory analysis was actually performed. Defendant also suspected that contrary to what was stated in the affidavit, the detective must have given the informant money to obtain the "Molly" and that this information might be contained in any contemporaneous police reports prepared by the detective. Accordingly, defendant filed a motion on December 12, 2016 to compel the State to respond to his discovery request.

On the December 19, 2016 return date, the judge determined that she would proceed with defendant's motion to suppress and for a <u>Franks</u> hearing, rather than with his motion to compel discovery. At oral argument on the motion, defense counsel and the judge briefly discussed the scheduling issue:

> [DEFENSE COUNSEL]: I had requested of the prosecutor's office a copy of this lab report, but, again, Judge, my requests have gone ignored. I never received anything in terms of a redacted lab report, but, Judge, I guess that's a motion for another day.
>
> THE COURT: And another judge.
>
> [DEFENSE COUNSEL]: And another judge.

Without the laboratory report and the other items he sought in his motion to compel, defendant was unable to meet his heavy burden of demonstrating that any of the detective's statements in the warrant application were false.

Accordingly, the judge denied defendant's motion to suppress the evidence seized under the warrant and for a Franks hearing.

Six months later, a different judge finally considered defendant's motion to compel discovery. Recognizing that the first judge had already upheld the validity of the warrant against defendant's unsupported Franks attack, the second judge denied defendant's motion to compel. In doing so, the judge did not examine the laboratory report or any recordings or transcripts of the consensual intercepts to determine whether releasing them to defendant would reveal the identity of the informant. The judge did not even determine whether such items existed by requiring the State to provide a written inventory of the materials that were available and responsive to defendant's discovery request.

Instead, the judge ruled that defendant was improperly engaging in a "fishing expedition" designed to reveal the informant's identity. The judge made this ruling even though defendant continued to insist that any evidence produced by the State in response to his discovery demand could be redacted to avoid disclosing this information.

The judge also stated that because the motion for a Franks hearing had already been denied, defendant no longer needed any discovery concerning the underpinnings of the search warrant. Therefore, the judge concluded that this information was not relevant to the charges defendant faced, which concerned

A-2882-17T4

the drugs and other contraband found during the search, rather than the "Molly" the informant gave the detective after meeting with defendant.

As discussed above, defendant thereafter pled guilty to count two of the indictment, and was sentenced to seven years in prison with a three-and-one-half-year period of parole ineligibility. The judge dismissed the remaining counts of the indictment. This appeal followed.

After viewing these idiosyncratic circumstances through the prism of the legal principles governing our discovery process, we are constrained to conclude that the trial court erred in denying defendant's motion to compel discovery. First, the timing of the court's consideration of the motion unduly prejudiced defendant. Defendant obviously needed discovery, especially the laboratory report, to mount a viable attack on the validity of the search warrant. After all, the only evidence of criminality the State had to support the warrant was the report's finding that the substance the informant brought out of defendant's house was "Molly" and not some innocuous chemical compound. Thus, it was critically important that defendant have access to the laboratory report in advance of the court's consideration of his motion to suppress. Because the State did not provide this information to him, defendant's motion had no chance of success. The court's decision to consider the motion to compel discovery six months later did nothing to remedy the prejudice

defendant had already suffered due to the unique scheduling protocol followed in this matter.

Second, Rule 3:13-3(b)(1)(C) provides that the laboratory report should have been automatically given to defendant upon the filing of the indictment. In addition, the State was also required to give defendant copies of any police reports prepared in connection with the case, R. 3:13-3(b)(1)(E) and (H), and any video and sound recordings. R. 3:13-3(b)(1)(A). Here, the State did not even acknowledge that it possessed any of the discovery items defendant sought.

The State claimed that defendant was seeking the discovery solely to learn the informant's identity. But, there is nothing in the record to support that bald assertion. Defense counsel repeatedly stated that defendant did not object to receiving redacted versions of the laboratory report and any of the other records, including recordings of the telephone conversations between defendant and the informant, to ensure that the informant's identity was protected. However, the State refused, and the court declined to require, the production of even redacted copies of these items.

In this regard, we note that the State's reliance upon our decision in Broom-Smith is misplaced because that case is readily distinguishable from the present matter. In Broom-Smith, the court held that the defendant was not

entitled to the results of a confirmatory drug analysis of the cocaine seized in that case because the police had previously conducted a field analysis of the substance and that was the only information as to the nature of the substance they provided to the judge who reviewed the warrant application. 406 N.J. Super. at 231. Here, however, the detective who supervised the informant had no first-hand knowledge whatsoever whether the item the informant gave him was "Molly." Therefore, the laboratory report was the only source of this important information in the warrant application and it was highly relevant to defendant's motion to suppress.

In addition, we grounded our decision in Broom-Smith largely on our conclusion that the "defendant's broad demand for all documents created by law enforcement prior to the warrant application was a veiled attempt to learn the identity of the confidential informant." Id. at 240. As discussed above, that was certainly not the case here, where defense counsel made clear that the court could redact the discovery in any manner necessary to protect the informant's identity.

In sum, because defendant was not able to investigate anything in the detective's affidavit by obtaining routine discovery that should have been automatically provided to him, defendant did not have a fair opportunity to pursue his motion to suppress the evidence seized during the search authorized

12

by the warrant or to obtain a <u>Franks</u> hearing. Therefore, we conclude that the court mistakenly exercised its discretion when it denied defendant's motion to compel discovery.

The remedy to be afforded a defendant who successfully obtains a reversal of a pre-trial motion following a conditional guilty plea is clearly set forth in <u>Rule</u> 3:9-3(f), which states:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, the defendant shall be afforded the opportunity to withdraw his or her plea.

In accordance with the <u>Rule</u>, this matter must be remanded to the trial court, "where defendant may elect either to withdraw his plea and proceed to trial . . . or to accept his earlier conviction and sentence." <u>State v. Cummings</u>, 184 N.J. 84, 100 (2005).[3]

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In light of this determination, we have not considered defendant's contention under Point II of his appellate brief that the judge imposed an excessive sentence.

A-2882-17T4