NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0499-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUSTIN MORGAN,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**July 23, 2024**

**APPELLATE DIVISION**

Argued April 9, 2024 – Decided July 23, 2024

Before Judges Sumners, Smith, and O'Connor.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-05-1241.

Tamar Y. Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Tamar Y. Lerer, of counsel and on the briefs).

Kevin J. Hein, Assistant Prosecutor, argued cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Kevin J. Hein, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

This appeal presents a question of first impression regarding when the State may be compelled to provide field and health reports of narcotics detection canines in accordance with the Supreme Court's holding in Florida v. Harris, 568 U.S. 237 (2013). We granted defendant Justin Morgan leave to appeal from the trial court's September 1, 2023 order denying his motion to compel discovery of records relating to narcotics detection canine "Jocko."

We conclude that such records are not per se irrelevant to reliability and probable cause determinations and therefore, the court should have first heard the State's motion challenging the expert before denying defendant's motion for discovery. We reverse and remand for further proceedings consistent with this opinion.

I.

Just before midnight, on January 30, 2022, while patrolling in his marked canine unit, Voorhees Township police officer Matthew Buchhofer observed a white Ford F-150 leaving a convenience store with a poorly lit license plate, in violation of N.J.S.A. 39:3-61(k). The officer illuminated the plate with the headlights of the police vehicle and conducted a plate inquiry, which revealed the vehicle was registered to a "known narcotics dealer," who "typically travels with . . . product in order to make roadside deliveries." The officer then conducted a motor vehicle stop.

 A-0499-23

When Officer Buchhofer approached the vehicle, the driver, who was also the registered owner, became "instantly confrontational." Officer Buchhofer eventually turned his attention to defendant, the front seat passenger, and asked for his identification. The officer observed that defendant appeared nervous. He was shaking, perspiring, breathing heavily, and not making eye contact when answering questions.

Officer Buchhofer asked the driver and defendant to exit the vehicle so that he could conduct a "narcotics sniff . . . with [his canine] partner, Jocko." The canine team began the sniff at the rear bumper with the officer giving Jocko the starting command "patches on." While walking around the vehicle he observed Jocko's behavior change with "deep breaths and a head spin," and then scratching at the passenger side door. Considering this a positive alert, Officer Buchhofer fully searched the vehicle and its occupants. He only found contraband on defendant, recovering a loaded revolver, hollow point rounds, a speed clip, and a small glass jar containing a "rocklike substance," purported to be methamphetamine. He arrested defendant, and a subsequent search of the car yielded a digital scale in the glove compartment.

A grand jury indicted defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of hollow nose bullets, N.J.S.A 2C:39-3(f)(1); third-degree possession of a controlled

dangerous substance, N.J.S.A. 2C:35-10(a)(1); and second-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7(b)(1).

Pursuant to Rule 3:13-3, defendant sought discovery related to all training information and field reports associated with the canine team of Officer Buchhofer and Jocko. The State produced the training information, but it objected to producing the field reports on relevance grounds.

On March 7, 2023 defendant moved to compel production of the field reports, "specifically any and all: incident reports and canine activity reports involving Jocko, or alternatively a field log of Jocko's sniffs done at scenes, the date and time of the deployments, whether they resulted in positive or negative indications, and what[,] if anything[,] was recovered."

Defendant's motion was supported by a report authored by an expert in canine olfaction, John C. Sagebiel, Ph.D. Dr. Sagebiel evaluated Jocko's training records as well as the relevant reports from defendant's arrest and opined that Jocko's alert was false. Dr. Sagebiel cited facts in the record to support his opinion: no narcotics were found in the vehicle; Jocko had a history of giving alerts in the field that did not lead to the discovery of narcotics; Jocko did not give a consistent positive indication alert; and Jocko's training indicates he had a high odor threshold, making it unlikely the alert on the car was due to residual odor.

The State opposed the motion and cross-moved to bar Dr. Sagebiel's testimony and his report. After argument, the trial court issued an order denying defendant's motion. In an oral decision, the court relied on the United States Supreme Court's holding in Harris, reasoning that because the State provided the canine's training and certification records, "it would be error to require the production of records regarding performance in the field." The court also denied the State's motion to bar defendant's expert opinion evidence as moot, finding "the motion to compel raise[d] legal issues, rather than factual issues."

Defendant argues the following points on appeal:

> THE DEFENSE IS ENTITLED TO THE DISCOVERY REQUESTED, WHICH THE STATE IS REQUIRED TO DISCLOSE UNDER OUR COURT RULES, AND WHICH IS ESSENTIAL TO DETERMINE THE RELIABILITY OF THE DOG'S PERCEIVED ALERT.
>
> A. The Reliability of a Supposed Canine Alert is Essential to Assessing Whether the Alert Provided Probable Cause to Search.
>
> 1. The reliability of a supposed canine alert is dependent on a number of factors, including the quality of its training and the behavior of its handler.
>
> 2. Because not all dogs are reliable, not all handlers are reliable, and the perception of an alert is subject to

5

> manipulation, a dog's field performance is particularly important in determining the value of a supposed alert.

B. The Defendant is Entitled to the Discovery Sought Under our Court Rules and Case Law.

## II.

### A.

We "generally defer to a trial court's disposition of discovery matters." State v. Ramirez, 252 N.J. 277, 298 (2022) (quoting State v. Brown, 236 N.J. 497, 521 (2019)). Accordingly, a trial court's decision to grant or deny a motion to compel will be reversed only where "the court has abused its discretion, or its determination is based on a mistaken understanding of the applicable law." Ibid. We defer to a trial court's factual findings supported by credible evidence but review de novo the court's application of the law to those findings. See State v. Pierre, 223 N.J. 560, 577 (2015). While the matter before us concerns a review of the trial court's order denying defendant's motion to compel discovery, we note that a clear question of law is involved—whether Harris applies, and if so, in what manner it establishes boundaries on a criminal defendant's right to discovery in New Jersey police canine search cases.

### B.

6

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). As "[w]arrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions," State v. Pineiro, 181 N.J. 13, 19 (2004), "when the police act without a warrant, the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it 'f[ell] within one of the few well-delineated exceptions to the warrant requirement,'" State v. Bryant, 227 N.J. 60, 69 (2016) (alteration in original) (quoting State v. Johnson, 193 N.J. 528, 552 (2008)).

The automobile exception to the warrant requirement authorizes a warrantless search "when the police have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Witt, 223 N.J. 409, 447 (2015) (citing State v. Alston, 88 N.J. 211, 233 (1981)). In State v. Smart, our Supreme Court explained in detail the greater protection provided by New Jersey's automobile exception than that under the Fourth Amendment: "[T]hat enhanced protection derives from the extra

requirement that the circumstances giving rise to probable cause be 'unforeseeable and spontaneous'—in addition to the inherent mobility of the automobile stopped on a roadway. In New Jersey, both elements are necessary to justify a warrantless automobile search." 253 N.J. at 171.

New Jersey's probable cause definition is coextensive with that under our federal Constitution. Probable cause is a "'practical, nontechnical conception' addressing 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" State v. Basil, 202 N.J. 570, 585 (2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). A probable cause search "requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Chippero, 201 N.J. 14, 27 (2009) (quoting U.S. v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). We remain mindful that probable cause "deals with probabilities and depends on the totality of the circumstances." Ibid. (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

III.

A.

With these principles in mind, we consider defendant's right to discovery of the contested field and health reports under Rule 3:13-3(b). To guarantee fair and just trials and promote the search for truth, our court rules provide a

8

criminal defendant with broad pre-trial discovery. State v. Scoles, 214 N.J. 236, 251-52 (2013). "As codified in Rule 3:13-3, New Jersey has a tradition of what is often described as an 'open file' model of reciprocal pretrial criminal discovery." State v. Arteaga, 476 N.J. Super 36, 53 (App. Div. 2023) (quoting Ramirez, 252 N.J. at 295). However, there are limits to a defendant's automatic right to broad discovery to keep the process from "transform[ing] . . . into an unfocused, haphazard search for evidence." Ibid. As such, to be subject to disclosure, a defendant can only seek information relevant to the issues in the case. Ibid.

N.J.R.E. 401 defines relevant evidence as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." "In criminal matters, relevance from the prosecution's standpoint is generally determined by the substantive elements of the offense, while relevance from the defendant's perspective depends on both the elements of the offense and the prosecution's method of proving those elements (e.g., confessions, witness's testimony, circumstantial evidence)." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 401 (2022-2023).

Defendant argues that the trial court erred when it declined to order the State's production of Jocko's field and health reports pursuant to Rule 3:13-

3(b). His argument assumes that such reports are always relevant, and therefore subject to discovery under the rule. The United States Supreme Court's holding in <u>Harris</u> provides us with a framework for testing that assumption. 568 U.S. at 237.

<u>Harris</u> involved a drug-sniffing canine's alert during a lawful traffic stop, which prompted police to conduct a warrantless search. The police seized various ingredients for making methamphetamine. <u>Id.</u> at 240. The canine officer testified at the suppression hearing about his and his canine's extensive prior and ongoing training, and certifications. <u>Id.</u> at 241. On cross-examination, the defendant did not contest the quality of the training. <u>Id.</u> at 242. The trial court denied the defendant's suppression motion, finding the officer had probable cause to search the vehicle, however, the Florida Supreme Court reversed, holding an alert, with nothing more, could not establish probable cause. It further held:

> The State must present . . . the dog's training and certification records, an explanation of the meaning of the particular training and certification, field performance records (including any unverified alerts), and evidence concerning the experience and training of the officer handling the dog, as well as any other objective evidence known to the officer about the dog's reliability.
>
> [<u>Id.</u> at 242-43 (internal citation omitted).]

On appeal, the United States Supreme Court rejected Florida's bright-line approach to probable cause. It held that states cannot be required "to provide an exhaustive set of records, including the dog's performance in the field, to establish the dog's reliability," as such a rule "is inconsistent with the 'flexible common-sense standard' of probable cause." Ibid. (quoting Gates, 462 U.S. at 239). The Court stated, "[p]robable cause . . . is 'a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" Id. at 244 (quoting Gates, 462 U.S. at 235).

The Court also noted that field data may greatly overstate a dog's "false positives," and that "[t]he better measure of a dog's reliability . . . comes away from the field, in controlled testing environments." Id. at 246. "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. . . . [and] a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." Id. at 246-47 (emphasis added).

The Court explained:

> [a] defendant . . . must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting

that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings. Indeed, evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant . . . . [E]ven assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause.

[Id. at 247.]

The Court provided further instruction:

[A] probable-cause hearing focusing on a dog's alert should proceed much like any other. . . . If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If in contrast, the defendant has challenged the State's case, then the court should weigh the competing evidence.

[Id. at 247-48.]

Harris informs us that field records are not required for the State to meet its burden of establishing probable cause for a warrantless search. However, Harris also tells us that field records are not completely barred from consideration. Where a defendant challenges a dog's training and certification, field reports may be subject to discovery under Rule 3:13-3(b). Given the holding in Harris, we are not persuaded by defendant's argument that the field reports are discoverable as of right under Rule 3:13-3(b). The rule's broad

12

A-0499-23

reach cannot establish a right to the reports until defendant establishes their relevance. We turn to that question on the record before us.

B.

Dr. Sagebiel's expert report challenged both Jocko's training and the officer's actions as the dog's handler during the sniff. Applying the principles outlined in Harris, we conclude that Jocko's field and health records could be relevant to the reliability of his alert during the car stop if defendant is permitted to avail himself of that expert opinion. Jocko's reliability goes directly to Officer Buchhofer's probable cause determination for the warrantless search, which is relevant to any motion defendant elects to file as the litigation proceeds. See Harris, 568 U.S. at 247 (stating "evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant").

The record shows defendant proffered the canine olfaction expert, Dr. Sagebiel, to challenge the reliability of Jocko and Officer Buchhofer. While we express no opinion on Dr. Sagebiel's qualifications or the admissibility of his opinions, we conclude, consistent with the United States Supreme Court's holding in Florida v. Harris, that the trial court should have considered the State's motion to bar him.

13

We remand for the trial court to consider the State's motion to bar defendant's expert on the merits using the Daubert[1] standard adopted by our Supreme Court for criminal cases in State v. Olenowski, 253 N.J. 133, 151 (2023).[2] If, after conducting a Daubert inquiry, the trial court finds Dr. Sagebiel's expert opinion regarding the canine team's reliability is admissible, then it shall order the State to produce all of Jocko's disputed field and health records pursuant to Rule 3:13-3(b) in order to "advance the quest for truth" and ensure our "goal of providing fair and just criminal trials." Scoles, 214 N.J. at 252.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

[2] "Daubert provide[s] a non-exclusive list of four factors—commonly referred to as the 'Daubert factors'—to help courts apply the new standard. Those factors are: (1) whether the scientific theory or technique can be, or has been, tested; (2) whether it 'has been subjected to peer review and publication'; (3) 'the known or potential rate of error' as well as the existence of standards governing the operation of the particular scientific technique; and (4) general acceptance in the relevant scientific community." Olenowski, 253 N.J. at 147 (internal citation omitted) (quoting Daubert, 509 U.S. at 593-94).